ROSWELL H. PHELPS, EXECUTOR, *vs.* JULLA E. PHELPS
AND OTHERS.

Hartford Dist., March T., 1887. PARK, C. J., CARPENTER, PARDEE,
LOOMIS and BEARDSLEY, Js.

A testator gave his estate equally to his sons *R.* and *W.* and to his daughter *A.* with the following provision—"In the event of the death of either without leaving issue the portion of the deceased is to be shared equally by the survivors." Held that by death without issue was meant a dying without issue in the lifetime of the testator.

The will also provided that *A.* should keep her share in her own sole and separate right, or until her children should marry or become of age, and that if she should die without issue her portion should revert to her brothers. Held to mean that if she should die without issue in the lifetime of the testator her portion should go to her brothers, but that if she should live to come into possession of her share she was to hold it as her separate property.

The word "portion" in a will is more applicable to a share of an estate to be set out to a distributee than to the same share after it has been distributed and has gone into the possession of the person to whom it is given.

[Argued March 25th—decided November 2d, 1887.]

SUIT for the construction of the will of Richard H. Phelps, deceased; brought to the Superior Court in Hartford County, and reserved for the advice of this court. The case is fully stated in the opinion.

*C. E. Gross,* for Roswell H. Phelps and Alline Hoff, children of the testator.

*L. Sperry,* for the grandchildren of the testator.

*J. W. Johnson,* for William G. Phelps, son of the testator, and Edith Phelps, his wife.

CARPENTER, J. This suit is brought to obtain a judicial construction of the will of Richard H. Phelps. In the first clause he gives to his wife an annuity and the use of certain real estate for life, or so long as she remains his widow and lives on the premises. Under that clause no question arises.

The second clause is as follows : " All my estate, real and personal, of which I may die possessed (the aforesaid annuity and reservations excepted), I give equally to my children, Roswell, William, and Alline, or in the event of the decease of either of them without leaving issue at his or her decease, the portion of said deceased is to be shared equally by the survivors or their issue."

The first and most important question is—What estate do the children take ? Is it a fee or a life estate ?

It is difficult to distinguish this case from *White* v. *White*, 52 Conn., 518 ; and still more difficult to distinguish it from *Coe* v. *James*, 54 Conn., 511. In each of those cases it was held that the death of the devisees spoken of in the will meant death during the lifetime of the testator. We are inclined to follow those cases and adopt the same construction in this case.

We find that view strongly supported by several considerations suggested by other portions of the will. The leading thought in the mind of the testator was, to give all his property to his family—his wife and children. He first provides for his wife and then for his children. There is no primary gift to the grandchildren. The gifts to them, so far as they may be called gifts, are secondary, incidental and contingent. We see nothing in the case indicating a preference for grandchildren. There is no lack of confidence in his sons, for they are made executors; nor in his daughter or her husband, for he is made a co-executor, and, in one contingency, a trustee. If we compare the first and second clauses we shall see that the testator knew the difference between a life estate and a fee ; and he had in mind the appropriate language for creating the former, for in giving a life estate in the first clause he did so expressly, leaving nothing to implication. There is a marked difference in the language of the two clauses. It is inconceivable that he should desire to give but a life estate and should use language so much unlike that in the first clause and so apt to convey a fee. If he had stopped after naming his children, and omitted the rest of that clause, no doubt could be

entertained as to his meaning. We think that clause was
added, not for the purpose of providing for his grandchil-
dren upon the death of his. children after a possible long
life, but in view of the possibility that they might die young,
or at least before he did; so that if we read the will as
intending death during his own lifetime, we shall harmo-
nize those two clauses and give effect to his real intention.
Not only so, but that construction aids us materially in
understanding and harmonizing other portions of the will.
The third clause is as follows : "My daughter Alline is to
keep her share in her own sole and separate right, or until
her children shall marry or become of age, and should she
die without living issue her portion is to revert to her
brothers Roswell and William, or either of them, or their
heirs, as survivors." We remark, parenthetically, that the
words "her share" and "her portion" are more applicable
to a fee than to a life estate. They seem to imply that she
has an interest in the principal, as such, and not merely a
right to the income.

But to return. Precisely what is meant by this language
it is not easy to see. There is a slight implication that he
intended that her children on marrying or becoming of age
should have her portion of his estate ; but he does not say
that, and his language does not necessarily imply it. There-
fore we cannot say legally that he meant it. In providing
that his daughter should enjoy her portion as her separate
property, it seems to have occurred to him that that might
not always be necessary, and so he adds, "or until her chil-
dren shall marry or become of age." The rest of that clause
is plain enough, provided we assume, as we do, that he
intended death during his lifetime. Hence all that is ex-
pressed in this clause with sufficient certainty is, that if his
daughter dies before he does, leaving no issue, her portion
shall go to her brothers; and if she lives to come into pos-
session of her share, she shall enjoy it as her sole and sepa-
rate property.

We may add that the word "portion," used in the second
clause of the will, is much more applicable to a share of an

estate in view of a prospective division of it under a will, than to the same share after it has passed to the distributee and is being enjoyed by him. It is then almost invariably spoken of as his property or his estate, and no longer as his share of an estate. It is therefore a word that the testator would more naturally have used with reference to shares of his estate that would at once upon his death become fixed, and to facts which would then operate at once upon the distribution of his estate, than with reference to the ultimate disposal of the shares at the end of the lives of the legatees.

A further consideration in favor of the view that the "dying without issue" in the second clause of the will means a dying in the lifetime of the testator, is, that while the contrary view would give his children severally only life estates in the portions given them, yet the gift over to the survivors on the death of either without children has no such limitation attached to it, and passes to the survivors in fee. No reason can be conceived why the children should take only life estates in the primary bequests, and yet fees in the secondary or contingent ones.

The fourth clause of the will is as follows:—"In case of the decease of my son William before his youngest child becomes twenty-one years of age, my real estate in Maryland, occupied by him, is to be sold, and the avails thereof, with the rest of his share, are to be invested in the state of Connecticut by my executors, and his children are to reside in said state in order to receive the benefit of the avails of this portion, and the general care and supervision of them and their property and its income and expenditure are to be under the care and supervision and control of my executors, according to their best judgment, for their education and support, and the support of their mother if living, until the youngest surviving child becomes twenty-one years of age, and then their portion is to be given to said children or the survivors of them. In case of the decease of said children and of their father before they are twenty-one years of age, leaving no issue, their portion is to revert to my chil-

dren Roswell and Alline, and in case of their decease then to their issue."

If we bear in mind that the testator is speaking of William's death during his own lifetime, it is not difficult to discover his meaning. He contemplates such death in one of two contingencies—leaving children, the youngest child being under twenty-one years of age, or leaving no children or the issue of children. In the former contingency the share that would otherwise have gone to William is placed in trust until the youngest child comes of age, for the support and education of the children, and the support of the mother if living, when the principal is to be distributed to the children. In the latter contingency William's portion is to go to his brother and sister or their issue. Inasmuch as William survived the testator, the trust fails, the widow and children of William take nothing under the will, and the whole fourth clause becomes inoperative, as neither contingency on which it depends has happened or ever can happen.

A question is made whether the provision that the children shall provide for the widow, in case the provision for her support proves to be insufficient, is a charge upon the estate. That question has not been discussed by counsel, and as no one appears in behalf of the widow, who, perhaps, has more interest in that question than any one else, we have deemed it inexpedient to decide it.

The Superior Court is advised that the children take their respective shares in fee simple; that the daughter takes her share to her sole and separate use; and that her children and the children and widow of William take nothing under the will.

In this opinion the other judges concurred.