# MEACHAM *v.* GRAHAM.

## (*Nashville.*   February 10, 1897.)

1. WILLS.  *Court inquires on its own motion as to propriety of construing.*

   The Court will, on its own motion, investigate the question whether or not a bill for the construction of a will has for its purpose merely the declaration of future rights, although all parties desire to have the will construed, as a premature adjudication as to such rights would in law be no adjudication at all, and would not be binding.  (*Post, pp. 197–200.*)

2. SAME.  *When application for construction maintainable.*

   An application originating with the executor, but joined in by a legatee and those claiming as remaindermen, for the construction of a will, to determine whether the legacy is absolute or limited to a life estate, will not be dismissed as premature where the purpose of the executor is to learn whether or not he shall require security from the legatee upon turning over the fund to her, and the purpose of the legatee is to be relieved of any bond or restriction, and to know whether she has an absolute power of disposition or must hold the fund for the remaindermen, although there is no allegation of waste or improper management or peril to the funds which would entitle the remaindermen to a present determination of their rights if the application was made by them alone.  (*Post, pp. 197–200.*)

   Cases cited and approved: Booker *v.* Booker, 5 Hum., 507; Reid *v.* Watkins, 11 Lea, 158.

3. SAME.  *Absolute power of disposition annuls limitation over.*

   A limitation over after a bequest of personal property with unlimited power of disposition in the first taker, is void, as the two estates are inconsistent.  (*Post, pp. 200, 201.*)

   Cases cited and approved: Smith *v.* Bell, M. & Y., 302; Bean *v.* Myers, 1 Cold., 227.

4. SAME. *Unlimited power of disposition implied.*

The unlimited power of disposition in a legatee, which will defeat an attempted limitation over, need not necessarily be given in express words, but may be implied by the language of the will. (*Post, p. 201.*)

Cases cited and approved: Bradley *v.* Carnes, 94 Tenn., 27; Williams *v.* Jones, 2 Swan, 620; Booker *v.* Booker, 5 Hum., 503.

5. SAME. *Absolute estate not cut down by subsequent provisions, when.*

The Courts refuse to cut down an estate already granted in fee or absolutely when the supposed terms of limitation are to be found in some subsequent portion of the will, and are not in themselves clear, unmistakable, and certain, so that there can be no doubt of the meaning and intention of the testator. (*Post, pp. 205, 206.*)

Cases cited: 144 N. Y., 287; 103 N. Y., 453; 81 N. Y., 356; 11 L. R. A., 610; 7 L. R. A., 517; 8 L. R. A., 696.

6. SAME. *Same. Example.*

An absolute legacy to a daughter is not cut down to a life estate by a subsequent clause providing that the legacy shall be paid over to trustees for her benefit, but that if she reaches twenty-one unmarried it shall be paid to her directly "to be held and used by her until her marriage," and then to be settled upon a trustee, to be held in trust for her during her natural life, and if she dies without living children her share of the "estate" to go to the testator's sons, as the reference to her life will be construed merely to measure the duration of the trustee's estate, and not that of her own, and the limitation over held to take effect only in the event of her death before testator, where such construction accords with the theory of the will; and a contrary construction would be inconsistent with the absolute gift of the land to her, in view of the use of the word "estate" in the limitation over. (*Post, pp. 193–195, 201–207.*)

Cases cited: 62 Am. Dec., 397; 119 Mass., 172; 78 Penn. St., 436; 92 Penn. St., 514; 11 Am. St. R., 922; 7 L. R. A., 517; 8 L. R. A., 696; 11 L. R. A., 610.

7. SAME. *Limitation over upon legatee's death before testators.*

A limitation over, under a bequest of personal property, in the event of the death without living children of the first taker, to whom the will in the first instance gives an absolute power of disposition, will be construed to take effect only in the event

of the death of the first taker before that of the testator, un-
less a contrary intention clearly appears from other provisions,
as the testator cannot be presumed to intend to cut down an
absolute estate already given, by a subsequent provision. (*Post*,
*pp. 193–195, 207–220.*)

Cases cited and approved: Vaughn *v.* Carter, 85 Tenn., 302.

## FROM HICKMAN.

Appeal from Chancery Court of Hickman County.
A. J. ABERNATHY, Ch.

PITTS & MEEKS and BATES & CLAGGETT for
Meacham.

H. PARKS for Jno. M. Graham.

FIGUERS & PADGETT and G. T. HUGHES for T.
H. and H. H. Graham.

WILKES, J. Samuel L. Graham died on January
8, 1892, leaving a will executed on July 23, 1888,
and a codicil executed May 27, 1891. He owned
an estate of the estimated value of five hundred
thousand dollars, and left surviving him a widow,
Martha J. Graham, a son by a former marriage,
John M. Graham, and a son and daughter, Harry
H. and Thomasella H., by his second marriage.
Harry H. and Thomasella H. were minors at the
date of the will, but both had attained the age of
twenty-one years before it took effect. The will and

Meacham *v.* Graham.

codicil were duly probated in the County Court of Hickman County, Tennessee, on the first Monday in February, 1892, and J. M. Meacham qualified as executor.

The testator devised and bequeathed specific property to his three children respectively, valued by him as follows:

| | |
|---|---:|
| To John M. Graham | $158,000 |
| To Harry H. Graham | 93,000 |
| To Thomasella H. Graham | 85,000 |

This was given to them absolutely and without limitation, and about it there is no controversy. It was by Item 5 of the will and Item 2 of the codicil that the above property was given to Thomasella, and, as to this property, there is no controversy.

Item 6 of the will is: "I bequeath and devise to my son, Harry Hardeman Graham, and to my daughter, Thomasella Graham, an equal portion of my entire estate with my son, John M. Graham. It is my intention and desire to give to each of my three children an equal share in value of my estate, no one having any preference the one over the other.

"Item 7. When my son, Harry H., arrives at the age of twenty-one years, my executor will pay over to him, out of the assets of my estate, an amount equal in value to that bequeathed and devised to my son, John M., in the third clause of this will; provided, that, in his opinion, there will

14 P—13

be enough to make the two younger children equal to John M., and, if not, he shall turn over to Harry H. only what he may think his share will amount to.

"Item 8. At the day and date my son Harry arrives at the age of twenty-one years, my executor shall make an inventory and account of my estate, and if my two younger children have not already been made equal in value and amount with my son, John M. Graham, then my executor will pay over to each of them, my said younger children, an amount equal in value to that devised and bequeathed to my son, John M. Graham, and after they have been made equal with my son John, then the remainder and residue of my estate to be equally divided into three shares, and one share of one-third each to be paid over to each of my three children, so that each shall receive an equal share of my entire estate, except the special gifts herein provided by myself.

"Item 9. At the same date and time, just above mentioned, my executor will pay over to my daughter, Thomasella Hardeman Graham, in the manner hereinbefore and hereinafter indicated, out of the assets of my estate, an amount equal in value to that bequeathed to my son, John M., in Item 3 of this will.

"Item 12. I will and direct that my executor pay over the legacy herein intended for my daughter, Thomasella Hardeman (except the small special gifts), to a trustee to be appointed by the proper

Court, under good and sufficient bond, for my said daughter, except the plantations devised to her in Item 5, to wit: 'Wayside' and 'Redleaf,' and a part of 'Mosswood,' purchased of A. F. Wheeler, in Washington County, Miss., and containing, in all, about three thousand acres. This land is given to her without limitation or restriction. That part of her share to be paid to her trustee shall be for my daughter, to her sole and separate use, free from the control, contracts, and liabilities of any husband that she may thereafter have. Upon the written application of my said daughter said trustee shall have the power to invest as much as the one-half of the funds or assets that may come into his hands in a home or in land for her, to be held in trust as above stated. But in the event of her attaining the age of twenty-one years unmarried, then, and in that event, her said legacy shall be paid to her directly, to be held and used by her until her marriage, and then to be settled upon a suitable trustee of her own selection. The legacy to be held in trust for my said daughter, subject to the foregoing limitations and restrictions, for and during her natural life, and, in the event of her death without living children, her share of the estate to go to my sons, John M. and Harry H., equally, and, in case either of them shall be dead, leaving living children, then to their child or children.''

These are all the clauses necessary to be quoted.

Appellants insist that, under said will, Thomasella

takes only a life estate in that portion of the property bequeathed to her, outside of the Mississippi lands, with a limitation over—in event Thomasella dies without living children—to John M. or Harry H., or their children if either of them should be dead. Appellees, Harry H. Graham and Thomasella Graham, insist that the said Thomasella, having survived her father, takes an absolute estate in the said property.

The Chancellor decreed in favor of the contention of the said Harry H. and Thomasella, adjudging that Thomasella is the owner in fee of said property. Construing said will, the Chancellor adjudged that the following clause of the twelfth item: "And in the event of her death, without living children, her share of the estate to go to my sons, John M. and Harry H., equally, and in case either of them shall be dead, leaving living children, then to their child or children," was a limitation intended to take effect only in the event Thomasella died before the testator, and the said Thomasella, having survived the testator, her estate became, and is, absolute.

From this decree John M. Graham and his children prosecute an appeal, and assign this action of the Chancellor as error.

Harry H. joined with his sister, Thomasella, in this construction of the will, and does not complain. The cause has been heard by the Court of Chancery Appeals, and that Court held that the limitation was void because of the absolute power of disposition and

unlimited right to use the legacy in controversy, vested by the will in Thomasella, and thus arrived at the same result as the Chancellor. From this decree John M. Graham and his children appealed to this Court.

It appears that Thomasella attained her majority before the filing of the bill in this case, and was then, and is still, alive and unmarried.

A preliminary question of importance confronts us at the threshold of our investigation, and that is whether the matters now submitted to the Court are not prematurely brought before it; and whether this is not a bill to declare future rights, and whether any decree, at the present time, can be rendered by this Court upon the matters submitted. This question has not been presented by counsel or considered by the Court of Chancery Appeals or the Chancellor. All parties and their counsel desire the matter adjudicated and settled. But inasmuch as a premature adjudication is in law no adjudication, and will not be binding, we proceed to consider this question in the outset of our investigation.

The executor in the original bill presents to the Court the question of the proper construction of the bequests and devises to Thomasella, and her interest and estate under the several items of the will, and alleges that she attained her majority before the will took effect, and that he paid to her considerable sums after her majority, but was advised that there was a question as to whether she took such pay-

ments absolutely or only a limited estate therein, and he desires the question settled, and the direction of the Court whether he may continue to pay to her without responsibility to any contingent or supposed remaindermen, and he asks a general construction of the will. The children of John M. Graham, answering by guardian *ad litem*, insist that Thomasella takes only a limited estate under the provisions of the twelfth item of the will, and hence is not entitled to the corpus, but only the interest of the fund therein referred to, and asks that she be required to give bond; that the executor pay her no more money absolutely, and be charged with that already paid without bond. Thomasella answers and claims the whole of the property given her absolutely; that the payments already made to her by the executor were properly made and should be continued in the same way, and she asks that it be so decreed.

While the answer is filed as a cross bill, the matter of the interest she takes is not the subject of the cross relief prayed.

Jno. M. Graham, answering the original bill, insists that Thomasella takes only a limited estate under the twelfth item of the will, and insists that she give bond for the corpus of the estate, and that no money be paid her except on bond, and for that already paid she and the executor be held responsible.

John M. Graham filed a cross bill, repeating this contention among other matters not now material to

Meacham *v.* Graham.

mention.    He sets up the same matter in his an-
swer to the cross bill of Thomasella, and again in
his answer as guardian of John M. Graham, Jr.
Thomasella, in answering the cross bill of John M.
Graham, repeats her insistence that she is entitled
to the money mentioned in the twelfth item, abso-
lutely and without bond.

If the application in this case was made alone by
the contingent remaindermen, we are of opinion it
would be, in effect, to declare future rights, inas-
much as there is no allegation of waste or improper
management or peril to the funds.    But the appli-
cation comes primarily from the executor, who de-
sires the protection of the Court in paying out the
fund, the legatee claiming the right to receive it
absolutely, without bond or restriction, and the re-
maindermen insisting that he be held responsible for
payments already made, and be required to make
no more without bond.    The legatee joins in this
application in order that she may be relieved of
any bond or restriction, and may know whether she
has an absolute power of disposition, or must hold
the fund for the remaindermen.    Both of these par-
ties have a present interest to be protected and de-
clared by the Court.    It cannot be held that she
must so act as to imperil the property before she
can ask the aid of the Court.    All the parties hold-
ing interests, present and contingent, are before the
Court, and all join in the application.    So far as
the daughter and the executor are concerned, the

application is not to ascertain future rights, but to declare and decree present rights.

We are of opinion that the Court may, at the present time, legally and properly adjudicate the rights of the legatee, Thomasella, and the duty and liability of the executor in regard to her legacy, and, under the case thus presented, the application is not one merely to adjudicate and adjudge future rights. See *Booker* v. *Booker*, 5 Hum., 507; *Reid* v. *Watkins*, 11 Lea, 158. We proceed, therefore, to examine whether the legatee, Thomasella Graham, under the will of her father, takes an absolute or limited estate in the personal property for which, in certain contingencies, a trustee is provided—it being conceded that, as to the lands and specific gifts, her interest and title is absolute.

While the Court of Chancery Appeals and the Chancellor have arrived at the same result, they have done so by different holdings, but not, as we think, by necessarily inconsistent or contrary theories, under the special facts of this case. The Court of Chancery Appeals was of opinion that the estate given to Thomasella Graham is an absolute estate by the terms of the will. The Chancellor held that it became absolute upon the death of the testator— Thomasella being then alive—and that no limitation or contingency existed after that event. We first inquire whether the terms of this will give an absolute estate to Thomasella at any time.

It is a fundamental principle in determining this

question, that where there is an absolute and un-
limited power of disposition in the first taker of
personal assets, the limitation over is void. They
are inconsistent and cannot stand together *Smith* v.
*Bell*, Martin & Yer., 302–5. It is of the essence
of a valid executory devise or bequest that it be
not in the power of the first taker to defeat it by
any act of his. If an unlimited power of disposi-
tion be given the first taker, an absolute estate vests
in him, and the executory limitation is nugatory.
*Bean* v. *Myers*, 1 Cold., 227, 228. And this power
of disposition may be given not only in express
words, but also by words necessarily implying such
power. *Bradley* v. *Carnes*, 10 Pick., 27, 31, and
cases cited; *Williams* v. *Jones*, 2 Swan, 620; *Booker*
v. *Booker*, 5 Hum., 503, 511, 512.

Applying these principles to the case in hand, we
find that the fund in controversy is money. The
will was made in 1888. The testator died in 1892.
There are two contingencies in which a trustee should
be appointed to receive and handle them—one, the
minority of the daughter, the other, her marriage.
But if she attained twenty-one years of age and did
not marry, the funds were to be paid to her
directly, without the intervention of any trustee, to
be held and used by her without limitation while
unmarried, and only in the subsequent event of mar-
riage was a trustee to be the second time interposed.
It is possible she may never marry. It is left to
her own choice. She may forever defeat the inter-

position of a trustee. In the meantime the money is in her hands to use without limitation. If she may lawfully spend one dollar, she may spend it all. She may invest it as she likes. Purchasers from her will get good and absolute title. She can thus defeat wholly any executory devise. If so, it is void, and her estate is absolute.

The will uses the expression "to be held by her." What is the force of this expression? Does it mean that she is to hold for herself or for another? Must she, as the result of this expression, keep the fund intact, using only the income, and "hold" the corpus for her brothers or their children? Her father would not, we think, have imposed such a burden upon her. If he had designed such "holding," he would have interposed a trustee. Her youth and inexperience exclude the idea of her being constituted such trustee, even if we should overlook the paramount love of her father, and his desire to put her on an equality with her brothers, whose estates are unlimited. The evident purpose of the testator in interposing a trustee for her was to protect her in the event she was under disability of either minority or coverture, and, in that event only, and to give her absolute power of disposition, if she were a *feme sole* and of age.

There is another expression in the twelfth item which needs to be considered, and is the basis of an earnest argument that the testator intended she should take only a life estate. This expression is

in these words: "The legacy to be held in trust for my said daughter, subject to the foregoing limitations and restrictions, for and during her natural life, and, in the event of her death without living children, her share of the estate to go to my sons, John M. and Harry H., equally, and, in case either of them shall be dead leaving children, then to their child or children." The foregoing "limitations and restrictions" referred to are clearly those creating in her a sole and separate estate in the event she marries, and the holding in trust is, we think, to be during her natural life, if a trust arises by her marriage, so that in such event this part of her share might not go to her husband by virtue of the marital right. But the term, "during her natural life," has no application if she remain single, and the holding "during her natural life" evidently refers to the duration of holding by the trustee under the trust, and not to her holding or interest in the estate. In other words, it measures the duration of the trustee's, and not the duration of the daughter's, estate. That this is the proper construction is, we think, abundantly shown by the entire context of the will.

Only money was to go into the hands of the trustee, and only as to money can there be any possible claim that there is a limited estate. The real estate is given absolutely by unmistakable terms, clearly indicating that the part of the share which could be consumed should be held in trust, and that

only during her. life, if she remained married, but there is no intimation that the trustee should continue to hold for the brothers, nor is there any direction to pay over to them. The direction is that, in the event of her death without living children, her share of the estate should go over to the brothers, and not simply the share in the trustee's hands. This share would embrace the realty as well as the personalty, so that, unless construed as we have construed it, the real estate, as well as legacy, must go over by limitation, although the real estate had already been given absolutely to her, and the same applies as to the special gifts.

It is evident that the only purpose of trustees was to protect the estate, first, in case of minority, and second, in case of marriage. "For and during her natural life," then, merely defines the holding of the trustee if she marries, but is not intended to diminish her estate. *Skillen* v. *Loyd*, 6 Cold., 564, 565. Or, to state it otherwise, it was intended by the testator simply to exclude the marital right of the husband, which would otherwise have attached during the natural life of the daughter.

The entire will shows that the testator did not intend to burden the estate of his daughter in favor of his sons, but to protect her estate to herself.

1. There is an intense desire manifested that all shall be equal, and it is often expressed.

2. It would have been unreasonable that the real

estate should have been given absolutely, and the money should be limited.

3. The father would not have imposed upon his daughter so onerous a burden as to charge her with the duty of preserving a money estate intact for her brothers.

4. A portion of her legacy consists of teams, implements, provender, the mere use of which would consume it.

5. If the daughter never married, there was to be no restriction. Why should there be, if she did marry, except so far as might be necessary to protect her interests from her husband?

6. If the limitation applies at all, it extends to her whole share, and this is inconsistent with the absolute gift of the land.

It is not improper to note that this construction was evidently placed upon the will by her brother, John M. Graham, when he accepted as an absolute gift from the sister, Thomasella, and the brother, Harry H., $25,000 of the property.

The law favors the vesting of estates at the earliest possible time. *Underwood* v. *Dismukes*, Meigs, 299; *Stokes* v. *Weston*, 142 N. Y., 433. It also favors equality among children in the distribution of estates, and selects that construction of a will which leads to that result. *Stokes* v. *Weston*, 142 N. Y., 433.

The rule is well settled that Courts refuse to cut down an estate already granted in fee or ab-

solutely, when the supposed terms of limitation are to be found in some subsequent portion of the will, and are not, in themselves, clear, unmistakable, and certain, so that there can be no doubt of the meaning and intention of the testator.

If the expression in the will is doubtful, the doubt is resolved against the limitation and in favor of the absolute estate. *Washburn* v. *Cope*, 144 N. Y., 287–297; *Byrnes* v. *Stillwell*, 103 N. Y., 453; *Roseboom* v. *Roseboom*, 81 N. Y., 356; *Hall* v. *Palmer*, 11 L. R. A., 610, and notes; *Powers, Exr.,* v. *Indiana*, 7 L. R. A., 517, and notes; *Bills* v. *Bills*, 8 L. R. A., 696, and cases cited.

It will be noted that clauses six and eight of the will vest the daughter's share, and if the fee estate there given is to be limited at all, it must be by force of the provisions in Item 12. This item is not, in any sense, a devising or vesting clause. Everything had already been devised, but it was intended, as stated in the ninth clause, merely to show how the executors were to pay over the daughter's share.

The special gifts and lands were to be turned over to her directly. This left only the money, and this was to be paid to a trustee, if she were a minor; to her direct, if she were an adult, and unmarried; to a trustee, if she were married. The only other contingency was that she might die before the testator. In that event, the property was to go to her brothers, or their children. But, if she sur-

vived her father, and reached her majority unmarried, the property was to be paid to her directly, and without restriction, except such as she might herself interpose to protect the property in the marital relation.

We are of opinion that the Chancellor was also correct in holding that only in the event the daughter died before the testator, would there be a limitation over, but if she survived him, she was to, and did, take an absolute estate in all the legacies and devises. This construction is in accord with the great current of authority, and harmonizes all the provisions of the will, so that they can consistently stand together.

There is no conflict between the holding of the Chancellor and the Court of Chancery Appeals, under the facts as they are now shown to exist. The former held that unless the daughter died in the lifetime of her father, her estate was absolute, and the limitation was of no effect; the latter holds that the estate was absolute by the force and effect of the terms of the will, because the limitation was inconsistent with the absolute power of disposition previously given in the will. The daughter having survived her father, and reached her majority unmarried, under both holdings her estate became, and is, absolute. The rule is, that where an absolute power of disposition is given by will in the first instance, followed by a limitation over in the event of the death of the first taker without living chil-

dren, it will be held to mean death occurring before the death of the testator, unless a contrary intention clearly appear from other provisions, for he cannot be presumed to intend to cut down a fee already given by prior provisions under the items of a subsequent provision. *Pressley* v. *Davis*, 62 Am. Dec., 397; *Crosman* v. *Fields*, 119 Mass., 172; *Waugh's Appeal*, 78 Penn. St., 436; *Mickly's Appeal*, 92 Penn. St., 514; *Stevenson* v. *Fox*, 11 Am. St. R., 922; *Hall* v. *Palmer*, 11 L. R. A., 610, and notes; *Powers' Exr.* v. *Jenderine*, 7 L. R. A., 517, and notes; *Bills* v. *Bills*, 8 L. R. A., 696, and cases cited.

No slight circumstance or ambiguous words will prevent the application of the general rule, but the reason and terms must be plain, strong, and decisive in order that subsequent provisions may be held to cut down a fee already given into a lesser estate (*Benson* v. *Corbin*, 145 N. Y.); and the great weight of authority is in accord with this holding. We cite selected cases from twelve states holding this doctrine, and there are many others: *Washburn* v. *Cope*, 144 N. Y.; 39 N. E. Rep., 388; *Stokes* v. *Weston*, 142 N. Y., 433; *In* v. *Thenken*, 131 N. Y., 391; *Quackenboss* v. *Kingsland*, 102 N. Y., 128; 55 Am. Rep., 771; *Benson* v. *Corbin*, 145 N. Y., 358; *Trabue* v. *Terry* (Ky.), 9 S. W. Rep., 162; *Berney* v. *Richardson* (Ky.), 5 Dana, 424; *Wright* v. *Charboy* (Ind.), 28 N. E. Rep., 706; *Heilman* v. *Heilman* (Ind.), 28 N. E. Rep., 310; *King* v. *Frick*,

Meacham *v.* Graham.

135 Penn., 575; 19 Atl., 951; *Morrison* v. *Truby*, 145 Penn., 540; 22 Atl., 972; *Baker* v. *McGrew*, 41 Ohio, 113; *Choplin* v. *Turner* (S. C.), 2 Rich. Eq., 138; *Coe* v. *James*, 54 Conn., 511; *Phelps* v. *Phelps*, 55 Conn., 359; *Denise* v. *Denise*, 37 N. J. Eq., 163; *Barrell* v. *Barrell*, 38 N. J. Eq., 60; *Chaplin* v. *Daty* (Vt.), 15 Atl., 362; *Hall* v. *Chaffer*, 14 N. H., 215; *Clough* v. *Clough* (N. H.), 15 Atl., 127; *Edwards* v. *Bible*, 43 Ala., 666; *Harris* v. *Smith*, 16 Ga., 545; *Griswold* v. *Grier*, 18 Ga., 544.

A reference to only a few of the many cases will be necessary to illustrate the rule.

In *Kelley* v. *Kelley*, 61 N. Y., 47, the testator, in the second clause of his will, devised to his two children all his property, share and share alike.    In the third clause he directed his executors to rent out the real estate by the year and apply the rent to payment of debts and support of his children. The fourth clause is as follows: "In case of the death of either of my said children, I devise my whole estate to the survivor, and, in case of the death of both, I devise all my property, or what may then be left, to James and Michael Kelley, . . . or the whole to the survivor of them." Sixth clause: "It is my desire that my property might not be sold or mortgaged until my youngest child attain the age of twenty-one years."

Construing said will, the Court said: "The devise and bequest in the second clause of the will is absolute, and quite sufficient to pass the fee, but,

14 P—14

in the fourth clause, it is supposed to be qualified by the provision that, 'in case of the death of either of my said children, I devise my whole estate to the survivor, and, in case of the death of both, I devise all my property, or what may then be left, to James and Michael Kelley, . . . or the survivor of them.' . . . I think it quite apparent that the death of the children referred to in the fourth clause of the will, upon which contingency the estate would go to the defendants, was a death happening in the lifetime of the testator; and for this construction there is much authority. Upon the death of the testator, the fee became at once vested in the two children, and the limitation over became of no effect."

In *Embury* v. *Sheldon*, 68 N. Y., 228, the testator, among other things, provided as follows:

"Fifthly, all the rest, residue, and remainder of my estate, real and personal, I give, devise, and bequeath to my executors hereinafter named, . . . to have and to hold in trust for the purposes following, namely:

"1. To receive the rents, incomes, issues, and profits thereof for and during the lifetime of my said wife, and, after paying all necessary expenses, and the sums necessary for the support of my wife, as directed in the second clause of this will, to pay the remainder thereof to my daughter, Anna K. Sheldon, and my son, James William Embury, in trust, for the support of himself, his wife, and

children; my sons, Daniel Embury and Philip Augustus Embury, in equal proportions.

"2. After the decease of my said wife, in trust, to receive the rents, issues, incomes, and profits thereof for and during the lifetime of my son, James W. Embury, and, after paying all necessary expenses, to pay the net amount to the persons last above named, in equal proportions, and, upon the death of the said James W. Embury, the trust aforesaid shall cease; and I hereby give, devise, and bequeath the said rest, residue, and remainder of my estate as follows: One-fourth part thereof to my daughter, Anna K. Sheldon, for her sole and separate use, pursuant to the statutes; one-fourth part thereof to the children of my said son, James William Embury; one-fourth part thereof to my son, Daniel Embury, and one-fourth part thereof to my son, Philip Augustus Embury. In case of the death of Anna, Daniel, or Philip, leaving lawful issue surviving them, I order and direct that such issue shall take, of income as well as principle, the share which the parent would have been entitled to if living; and, should no lawful issue survive them, the share of the one so dying shall go to the survivors of the last above named persons and the children of my son, James William, in equal proportions, *per stirpes*, and not *per capita;* and, in case of the death of any child of my son, James William, leaving lawful issue him or her surviving, such issue to take the share which the parent would

have been entitled to if living. In case my son, James William, leave no children or grandchildren him surviving, then their share of my estate shall form part of my residuary estate, and be divided among the said Anna, Daniel, and Philip Augustus, the survivors and survivor of them, and the children of such as may be deceased, equally, *per stirpes*, and not *per capita;* and I hereby appoint my executors guardians of the estates of all minors who, under the provisions of this, my will, may become entitled to any part of my estate.''

Construing this will, the Court held that the death of a child, referred to in the will, meant a death during the lifetime of the testator, and, upon the death of the testator, the children surviving him took absolute vested estates.

It will be noticed that the will, in that case, made provision expressly for the children of any child of the testator that might die, by providing that such children should take the share of the deceased parent. It also appointed active trustees to hold the property and receive the rents during the lifetime of two persons, thereby postponing the possession and full enjoyment of the property to his children until the termination of said trust.

In the case at bar Mr. Graham makes no provision for the children of his daughter, Thomasella, nor does he postpone or impair her present full enjoyment of the estate.

In *Quackenboss* v. *Kingsland* 102 N. Y., 128 (S.

C., 55 Am. Rep., 771), the will provided as follows: "All the rest, residue, and remainder of my estate, both real and personal, I give, devise, and bequeath unto my son, Daniel Kingsland, and to his heirs; but in case my son, Daniel, should die without lawful issue, I give and bequeath it to my remaining children, share and share alike." Daniel survived the testator. Held, that Daniel took an absolute estate, the limitation being one to take effect only in the lifetime of the testator. See extended note to this case, 55 Am. Rep., p. 774.

In *Stokes* v. *Weston*, 142 N. Y., 433, the will provided as follows:

"1. I give, bequeath, and devise to my wife, Eliza Stokes, in case she survives me, the use of all my property for and during the term of her natural life.

"2. I give, devise, and bequeath to my children, Alfred Stokes, Charles E. Stokes, and Clara McGee, the rest, residue, and remainder of my property, in equal proportions; but in the case of the death of my sons, Alfred and Charles E., or either of them, without issue living at the time of his decease, then the share of the one so dying without issue shall be divided equally between my grandchildren, Henry Weston and Porter Weston."

Held: (1) The law favors equality among children in the distribution of estates, and, in case of doubtful construction of the language of a will, it selects that which leads to such a result; (2) further-

more, the law favors the vesting of estates. In the will before us there are apt words bequeathing and devising the entire estate in equal proportions to the three children of the testator, and our construction of the language that follows gives full force and effect to these words of bequest and devise; (3) in the first subdivision of the will the testator gives his wife the use of his entire estate for life. In the second subdivision of the will, by apt language, he vests his entire estate in his two sons and daughters in equal proportions, and goes on to say, "but in case of the death of my sons, Alfred and Charles E., or either of them, without issue living at the time of his decease, then the share of the one so dying without issue shall be divided equally between my grandchildren, Henry Weston and Porter Weston." The death referred to was that of a son during the lifetime of the testator, and, as they both survived him, they, with their sister, took the entire estate, subject to the life estate of the widow.

The Court say: "It should be remembered that the testator was, in the clause under construction, seeking to dispose of his entire estate, and, having vested the title in his three children, ordinary prudence required him to guard against intestacy as to the share of a son who might die without issue before the will should take effect. . . . This construction gives full force and effect to all the language of the will, and does equal justice to the

three children of the testator.  On the other hand, the construction contended for by the guardian *ad litem* of the infant grandchildren ignores the plain provisions of the instrument, and, if sustained, would lead to an unjust and unnatural will.  It would give to the daughter absolutely one-third of the estate, real and personal, while each son  .  .  .  would take a mere contingent estate in fee in one-third of the estate, liable to be reduced to a life estate at any time by his death without issue.  Such an estate is of little value, either to sell or mortgage, and, while it is perfectly competent for the testator to have thus discriminated between his children, we hold that such intent must be made manifest by plain and unmistakable language, which is not to be found in the will we are now construing.''

In *Washbon* v. *Cope*, 144 N. Y., 287, the will provided, in substance, as follows: (1) His executors and trustees to keep his farm in good repair: (2) devises a farm and certain live stock and farming utensils to his youngest son, Henry R. Washbon; (3) bequeathes to his daughter, Nancy Cope, ten thousand dollars; (4) bequeathes to his son-in-law, John Cope, two thousand dollars; (5) bequeathes to his son, Robert, twelve thousand dollars; ''(6) I give and bequeath and devise all rest, residue, and remainder of my property, real and personal, to my three children, Robert Washbon, Nancy Cope, and Henry R. Washbon, to be divided between them; (7) I furthermore desire and direct that, in the

event of my daughter, Nancy Cope, wife of John Cope, Jr., shall die without children, the portion herein given to her shall be given to my sons, John G., Robert, and Henry R., or their heirs, share and share alike."

Held: In an action brought by the heirs of the testator's sons, to compel Nancy to give security for the ultimate safety and forthcoming of the sums paid to her, that the death referred to was a death in the lifetime of the testator, and that, as Nancy survived him, she took absolutely.

Further: An estate granted in fee or absolutely by a will, may not be cut down or limited by a subsequent clause, unless the language is so clear, unmistakable, and certain, as to leave no doubt that such was the intention of the testator.

The Court says: "We find, in the first place, by the fourth clause, an absolute and unconditional bequest of $10,000 to his daughter, Nancy Cope, . . . and by the seventh clause the testator makes residuary legatees and devisees of his three children, Robert, Henry, and Nancy, the amount to be divided between them.

"We then find the eighth clause (see above). Death at what time? Does it mean her death before the death of the testator, or does it mean her death at any time, either before or after his death, provided she shall die without children? We are confronted, in the first place, by the well-settled rule that Courts refuse to cut down an estate already granted

in fee or absolutely, when the supposed terms of limitation are to be found in some subsequent portion of the will, and are not in themselves clear, unmistakable, and certain, so that there can be no doubt of the meaning and intention of the testator.

The expression in the eighth clause, giving the most weight to it in favor of the plaintiffs, can only be said to be at least doubtful as to what period of time the death of Mrs. Cope is to be referred, and, hence, if the rule above mentioned is ever to be enforced, it would seem as if this were one of the cases described by the Courts as being proper for its application.

There is another rule, which is also well settled, that, where the devise or bequest over to third persons is not dependent upon the event of death simply, but upon death without issue or without children, the death referred to is death in the lifetime of the testator.     After citing numerous authorities, the Court says: "Enough cases have been cited to show what indeed there is no contradiction in regard to—that the exception to the rule must be quite clearly apparent from the language otherwise used in the will, and that, unless such language is to be found which shall render the meaning of the testator quite clear, the exception to the rule is not sustained, and the rule itself must prevail."

In *Phelps* v. *Phelps* (Conn.), 11 Atl. Rep., 596, testator devised his estate to his three children, with a proviso that, "in the event of the decease of

either of them without having issue at his or her death, the portion of said deceased is to be shared equally by the survivors or their issue.''

Held: Meant the decease of either of the legatees before the decease of the testator, and were not words limiting the estate devised to the life of the legatees.

The will also contained this provision as to his daughter: That she should '' keep her share in her sole and separate right, or until her children shall marry or become of age; and should she die without living issue, her portion is to revert to her brothers,'' etc. Held, that the intention of the testator was that, in case his daughter should die before he did, then her share should go to her brothers, but otherwise, she was to enjoy it as her sole and separate property. To the same effect the many other cases cited above.

We think there is a distinction between cases where a fee is given in the first instance, and subsequent provisions are relied on to limit the estate, and cases where a life estate is apparently intended in the first instance, and it is afterwards sought, by subsequent provisions, to enlarge the estate and make it absolute. The recent case of Benson v. Corbin, 145 N. Y., furnishes an illustration of this distinction. It is there said, p. 358: '' There is no dispute as to the general rule of construction, where real estate is devised in terms denoting an intention that the primary devisee shall take a fee on the

death of the testator, followed by a devise over in case of his death without issue, it has, I think, been uniformly held in England, and it is the rule supported by the preponderance of judicial authority in this country, that the words refer to a death without issue in the lifetime of the testator, and the primary devisee surviving the testator takes an absolute fee. And the doctrine has been repeated as late as *Washbon* v. *Cope,* 144 N. Y., 297.

"While such is the general rule, it is said to maintain its hold somewhat weakly and with a doubtful grasp, and to yield easily to any fact or circumstance indicating a different intention. Although that is undoubtedly true, it takes on some modification by force of another rule, equally well settled, that where there is primarily a clear and certain devise of a fee, about which the testamentary intention is obvious and without ambiguity, the estate thus given will not be cut down or lessened by subsequent words which are ambiguous or of doubtful meaning. If a slight circumstance or a slender reason will, in ordinary cases, prevent the application of the general rule, the circumstance and the reason must be strong and decisive, where the construction collides with a plain devise in fee and forces a change of its terms by cutting it down to a lesser estate. We do not easily trade a certainty for a doubt. I deem it a weighty consideration that a construction which follows the general rule, making the death without issue relate to a death in

the testator's lifetime, harmonizes every word and every expression in the will, and renders them all consistent and operative, while the rival construction raises an inconsistency at once, only to be remedied by lessening to a practical life estate what naturally stands as a fee, or, by discarding the inconsistent limitation as repugnant to the estate devised."

This is in accord, also, with the holding of this Court in the cause of *Vaughn* v. *Carter*, 1 Pick., 302.

Without commenting at length upon these cases, which lay down and illustrate the rule very forcibly, we think there are in the context no indications of intention to take the provisions for Thomasella out of the general rule that her estate should become absolute upon the death of the testator. Clearly is this the proper construction in view of our holding that the term "natural life " in this case was not intended to limit her estate, but only the estate of her trustee in the event of her marriage.

We are, therefore, of opinion that there is no error in the holding of either the Chancellor or Court of Chancery Appeals that Thomasella Graham, upon the death of her father, by the terms and provisions of his will, took an absolute estate in not only the lands and special legacies, but in the legacy also for which, in certain contingencies, a trustee is provided. In short, all the property given to her by the will and the decree of the Court of Chancery Appeals is affirmed. The costs will· be paid out of the estate by the executor.