McCLELLAN et al. v. MACKENZIE.

(Circuit Court of Appeals, Sixth Circuit. December 19, 1903.)

No. 1,196.

1. WILLS—CONSTRUCTION—LIMITATIONS OF ESTATE.

A court will not cut down an estate once granted absolutely in fee by limitations contained in subsequent parts of a will, unless the intent to limit the devise is manifested clearly and unmistakably; if the expression relied upon as a limitation be doubtful, the doubt will be resolved in favor of the absolute estate.

2. SAME—CONTINGENT DEVISE OVER.

When a devise or bequest over to a third person is made dependent upon the death of the first taker as a contingency, as by the words, "if either of my children should die," the death referred to is generally held to be one occurring during the lifetime of the testator, although when the devise is of a remainder there may be a question as to whether a death during the lifetime of the testator is referred to or a death before the remainder falls in.

**3. SAME—ESTATE OF·DEVISEE.**
  A will construed, and *held* to vest a daughter of the testator with title in fee simple to land devised to a trustee for her benefit, and subsequently conveyed to her by the trustee under power given by the will, and not to limit her estate to a life interest.

Appeal from the Circuit Court of the United States for the Western District of Kentucky.

R. M. Heath, for appellants.

John C. Doolan, for appellee.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

LURTON, Circuit Judge. This is a bill to enforce the lien of a mortgage upon realty situated in Christian county, Ky. The mortgagor was Mrs. Mary E. McClellan, a widow, who has since died. The defendants are the surviving children and representatives of children and the administrator. The mortgaged property was devised to Mary Evelina Sharp, afterward Mary Evelina McClellan, by the will of her father, Fidelio C. Sharp. The children of Mrs. McClellan contend that their mother took only a life estate, and that they take the remainder under the will of their grandfather, and do not take as heir of their mother. If this contention is well founded, the estate of Mrs. McClellan has terminated by her death, and the bill of complaint must be dismissed, since there is no lien upon the remainder.

Judge Evans, sitting in the court below, construed the will, and held that Mrs. McClellan took under that will the absolute estate, and directed a decree in accordance with the prayer of the bill. To this conclusion we agree. The testator was a country lawyer who had acquired a large estate, both real and personal. He left surviving him two sons and five daughters and his widow. The will was written by himself, and is dated Nov. 21, 1844. After devising to his wife, "during her natural life," a large part of his estate, the testator says of these devises:

"And all the devises so expressed are intended to be and vest in her a life estate only, and at my death, to pass to my children in the manner hereinafter named and dependent on the conditions hereinafter named upon the event that my wife E. J. Sharp should marry after my death; upon the happening of that contingency, it is my will that all my legacies and bequests left to her in this will for and during her life, shall cease and determine. * * * My wife shall then be assigned dower of one-third out of that portion of my estate only and the proceeds, as is included in those devises for life; which dower be it in real, personal or mixed estate shall be on my estate in her for life only, and at her death to pass to my children as hereinafter directed. * * *"

The next clause is in these words:

"It is my will that all the balance of my land not before devised * * * and all my estate not before devised, be it real, personal or mixed * * * I will to be divided or the same may be sold and the proceeds thereof divided into seven equal potions, one-seventh part thereof I devise to Solomon S. Sharp, my son. One-seventh part to my son Henry J. Sharp; and one-seventh part thereof to each of my daughters namely one equal potion to Eleanor James Templeton. One equal potion to Ann Elizabeth Sharp, one equal potion to Catherine Maxwell Sharp, one equal potion to Mary Evelina Sharp, one equal potion to Caroline Matilda Sharp."

The spelling and punctuation is that of the testator, and his spelling and punctuation will be followed in all quotations from the will.

Having thus disposed of a part of his estate for the life of his wife and of the balance not devised to his wife, the will then proceeds as follows:

"And it is my will that all the estate devised to my wife for and during her life, at her death or upon the event of her marrying such potion as this will provides for the happening of that contingency and the balance at her death is to be divided into seven equal potions and each one of my before named children is to receive one seventh part thereof it is my will that the respective potion of my estate devised to my four youngest daughters who are unmarried shall vest in my son Solomon A. Sharp and be held by him in Special Trust for their several uses and that all the use benefit advantages & profits of their several potions shall be secured to them respectively free from and exempt from the control and free from all liability to the contracts & debts of their husbands if they should marry but that the Trustees with the written assent of the cestue que use may sell dispose of & revest & change & commute any potion of the property of either of the cestue que Trusts still holding the proceeds in like trust & for like uses, and the Trusts is authorized when in full majority of age upon mature reflection with the written assent of my son in law Joseph Templeton and with the written request and desire of the cestue Que Trust a fee simple estate in their respective shares assigned them in this will or such potion of their shears as in his precidence he may think right the object of the trust being to secure to my daughters a competency for their life & if either of my children should die their potion are to pass in fee simple to their brothers & sisters who may survive them or to the lawful heirs of those who may have died leaving children to inherit I devise to my son Solomon S. Sharp my law library & my gold watch; but their value is to be deducted out of his potion of my estate as it is my will that each of my children shall have an equal potion; and in order that it may be so I have attached to this will a paper containing advancements; which is to be accounted for at the prices set down by me, in the equalization of the several potions that all may finally be made equal in their respective potions."

If there is anything well settled it is that a court will not cut down an estate once granted absolutely in fee by limitations contained in subsequent parts of a will unless the intent to limit the devise is manifested clearly and unmistakably. If the expression relied upon to limit a fee once devised be doubtful, the doubt should be resolved in favor of the absolute estate. Birney v. Richardson, 5 Dana, 424; Trabue v. Terry (Ky.) 9 S. W. 162; Meacham v. Graham, 98 Tenn. 190, 205, 39 S. W. 12; Benson v. Corbin, 145 N. Y. 358, 40 N. E. 11; Washbon v. Cope, 144 N. Y. 287, 297, 39 N. E. 388.

The clause which is supposed to have the effect of cutting down the fee devised to Mrs. McClellan to a mere estate for her life is the one following the devise of the remainder in the property given the widow for life, and beginning with the words, "it is my will that the respective potion of my estate devised to my four youngest daughters," etc. But it is evident that the purpose of the trust created is to protect the estate of the daughters during minority, and in case of marriage against the contracts, liabilities, and marital rights of husbands.

The expression, "the object of the trust being to secure to my daughters a competency for their life," does not manifest a purpose to cut down the character of the estate devised to the daughters, but is rather a measure of the possible duration of the trustee's estate. But whatever ambiguity there may be in this clause vanishes in the

light of the fact that the testator in this same clause provides a mode by which the trustee may relinquish the trust upon certain conditions, and by deed "vest in the cestui que trust a fee simple estate in their respective shares assigned them in this will."

Now, it is plain that, if the testator had understood that he had cut down the devise to his unmarried daughters to a mere life estate, he could not have described the effect of a relinquishment of the trust by the trustee's deed as operating to vest a "fee simple estate" to the share of such daughter under the will. The testator must certainly be credited with knowing the difference between a fee and an estate for life.

He had in the preceding clauses of the same will devised to his widow an estate for life in plain and correct terminology, and then by a further provision had given to his children the remainder in equal shares. If he had intended to give to his unmarried daughters an estate only for life, it is most curious that he should indicate such an intention in verbiage so doubtful.

But another consideration by which we may understand the intent of the testator in respect to the extent of the estate devised to his unmarried daughters is that in many ways and by many expressions he indicates his ruling purpose to be to preserve an equality between all of his children. It is particularly significant that after creating this very trust, and after providing for the contingency of the death of any of his children, and without any mark of punctuation, he adds:

"I devise to my son Solomon A. Sharp my law library & my gold watch; but their value is to be deducted out of his potion of my estate as it is my will that each of my children shall have an equal potion; and in order that it may be so I have attached to this will a paper containing advancements to such of my children that have received advancements which is to be accounted for at the prices set down by me in the equalization of the several potions that all may finally be made equal in their respective potions."

The trust contains no indication of a purpose to protect the estate or the remainder for the benefit of the children of the daughters or the brothers and sisters.

His grandchildren are not referred to except indirectly in the clause immediately following, namely:

"& if either of my children should die their potion are to pass in fee simple to their brothers and sisters who may survive them or to the lawful heirs of those who may have died leaving children to inherit."

This, it is said, is a continuance of the clause creating the trust, and should therefore be regarded as referring to the daughters for whom the trust was created, and as applicable only to the said daughters. But the association of this provision with the trust clause can have no great weight. The will is most inartificial, and marks of punctuation rarely occur. The language quoted is followed without stop by a devise of his watch to his son Solomon, and the clause itself is a part of an unbroken sentence embracing about one-half the will and several subjects. The subject is plainly a new one. It has no necessary connection with that which precedes. That he does not refer to his four unmarried daughters as a class who were to exclusively benefit by the death of each other is plain, for the share of

one dying within the time referred to is to pass in one contingency to brothers and sisters surviving. The class referred to must therefore include both brothers and sisters.

But upon what contingency is any particular share to be defeated? The expression is, "& if either of my children should die," etc. Now, if he had meant to dispose of a remainder upon the death of any child, he would have said, as he did about his wife's decease, "upon the death of any of my daughters." The death of his children at some time was not a contingency at all. Yet the testator only intends to make another disposition upon the happening of some event which may or may not occur. "If either of my children should die," plainly implies a death which may or may not occur. He must therefore refer to a death which might occur within or before some time or event which he had in mind. This is the rational interpretation of this clause, and is in accord with the rules of construction applied in such circumstances.

When an absolute gift is made to one with a provision over in "case he die," or "if he should happen to die," or "if he die" and other like form of words, the courts will assume that the testator had in mind something else than merely to provide for the case of the legatee dying at some time. In such cases the courts will construe the bequest over as intended to take effect in case the death referred to should occur in the testator's lifetime or before some period fixed for the enjoyment of the estate or gift which is in such event to go over. 2 Williams on Executors, 1126; In re Haywood, L. R. 19 Ch. D. 470.

The law favors the vesting of estates at the earliest possible time. When a devise or bequest over to a third person is made dependent upon the death of the first taker as a contingency, the death referred to is generally held to be a death in the lifetime of the testator. Though when the devise is of a remainder the question is enlarged by the inquiry as to whether a death during the lifetime of the testator is referred to or a death before the remainder falls in. Birney v. Richardson, 5 Dana, 424; Ferguson v. Thomasson, 87 Ky. 519, 9 S. W. 714; Meacham v. Graham, 98 Tenn. 190, 39 S. W. 12; Kelly v. Kelly, 61 N. Y. 47; Stokes v. Weston, 142 N. Y. 433, 37 N. E. 515.

But whether the testator referred to a death during his own lifetime, or before the period for the enjoyment of the estate devised to his wife for life and then to his children, is not important for us to determine, because Mrs. McClellan survived both the testator and his widow, and her interest ceased to be contingent long before her mortgage was made. Many years before this mortgage was made there was a proceeding in a court of the state of Kentucky for the purpose of having this will construed, and to have a trustee appointed in place of Solomon Sharp, who was dead. The parties to that suit were the children of the testator and representatives of such as were dead. That court appointed another trustee, and construed the will as giving to this substituted trustee the power to relinquish the trust, and to vest the full legal estate in Mrs. McClellan without the consent of Joseph

Templeton, he being dead. The trustee thus appointed did subsequently make a deed to Mrs. McClellan in exercise of the power which the court held he had. As Mrs. McClellan's children were not parties to that suit, they would not be concluded by the decree provided they had any interests under the will then construed.

But as we conclude that they took nothing under the will, and can only assert an interest in the property mortgaged as heirs of their mother, they as heirs are privies in estate with their mother, and are concluded by the decree of the Kentucky court so far as that court held that the substituted trustee had power, without the consent of Joseph Templeton, to convey the trust estate to Mrs. McClellan.

The decree of the Circuit Court was right, and it is affirmed.