WALTER S. LEWIS

 VS.

MRS. MARY WILLARD.

No. 7634.

January 12th,1920.

CHARLES F. CLAIBORNE, JUDGE.

This is a suit for attorney's fees. Petitioner is an attorney-at-law. He alleges that the defendant called at his office and engaged his services for opening the Succession of her late husband and probating his will; that he opened the succession and probated the will of her said husband, Charles F. Willard, and had her appointed Executrix thereunder and caused an inventory to be taken, including the examination of papers found in the bank-box of the deceased with the view of ascertaining what had become of certain bonds claimed by defendant aggregating $6,000 in value; that the inventory showed that the deceased had left very little property; that, at the request of defendant, petitioner examined, during several days, several trunks of papers to ascertain whether any of them were of any value; that the deceased left three policies of insurance upon his life in favor of the defendant as beneficiary; one for $1000 in the Royal Arcanum, and two for $5000 each in the Security Mutual Life Insurance Company of New York; that at the request of defendant petitioner corresponded with both insurance companies with the result that two of the policies were found to be of no value, and that the Security Company admitted its liability upon one of the policies which it paid, after deducting a loan of $800, and after petitioner had prepared and forwarded proofs of death; that the deceased, Charles H. Willard, met his death by falling from a tramway; that he was carried, in an unconscious condition, to the Touro Infirmary which refused to receive him; and that petitioner was requested by the defendant to examine into the circumstances of the accident in order to ascertain whether she had a claim in damages against the railway company or the Infirmary, and that he advised her that she had no claim against either; that the defendant consulted many times and at length with petitioner concerning the above matters, and that petitioner spent much time entertaining

103

the creditors of the estate, and explaining to them that the succession was without funds; that in the safe of the deceased were found certain mortgage notes drawn by one Saranflo aggregating $8,000, which deceased's book-keeper said did not belong to deceased, and which petitioner discovered were the property of the Department of Banks in Ohio represented by a New Orleans lawyer, and petitioner advised the defendant to have the claimant file a rule so as to retain a record of their disposition; that about this time petitioner broached the subject of compensation, when the defendant informed him that he could not expect to be paid since the succession had no funds, although on a prior occasion defendant had told petitioner not to forget to send his bill to her; that petitioner had made no stipulation with the defendant for a fee; that his services are well worth $160 which the defendant is well able to pay as she has received $9200 on two life insurance policies, and owns two lots and a large residence worth $3000 after paying the mortgage upon them.

The defendant, for answer, admitted that she had called at plaintiff's office with her deceased husband's will, in which she was appointed executrix, and told him that she did not think that it was necessary to open her husband's succession as he had left but little property; but that plaintiff advised her to have the will probated and to have herself appointed executrix; that she then engaged the services of plaintiff after he had explained to her that there was no personal liability, but that all costs and attorney's fees would be an obligation of the succession; she admits the services performed by plaintiff, but avers that they were rendered to the succession and not to her personally; that the whole service rendered by plaintiff concerning the policies of insurance, consisted in writing to the Royal Arcanum one letter and receiving a reply that the policy was no longer an obligation of the company; that the services of the plaintiff were not necessary with reference to the two policies in the Security Company; that the resident agents of the company had obtained the necessarybblanks for the proofs of death, and that the only service rendered by plaintiff in relation thereto was to procure the signature of the physician at the Charity Hospital which plaintiff volunteered to get; she denied that she employed

the plaintiff to fix any liability upon the Touro Infirmary or upon the Street Railway Company; she alleges that she called at plaintiff's office only when requested by him so to do, and then consulted only concerning the affairs of the succession; she avers that she referred the creditors of the succession to the plaintiff as attorney of the succession under his instructions, and that the Saranflo notes were surrendered under an order of court as a part of the proceedings of the succession; she further averred that at the request of plaintiff, she called at his office bringing with her her personal check-book, and that plaintiff then and there informed her of the total amount due to him for all services rendered to her personally to that date, for which he in his own handwriting made out a check to his own order, which he stated was a payment in full for all amounts due to him on whatever account; and that plaintiff then told her that she was under no personal liability to him on account of the succession of Charles H.Willard.

There was judgment for the plaintiff for $13. From this judgment he has appealed.

The record of the Succession of Charles H. Willard shows that the plaintiff, acting as the attorney of the defendant, filed a petition praying for the probate of the will and the appointment of the defendant as executrix and for an Inventory; that the appraisement of the property left by the deceased amounted to $194.28, consisting, for the greater part, of office furniture; that the contents of the bank-box of the deceased were scrutinized by him, and mentioned in the Inventory; that he obtained an order for the sale of the movables to pay debts; that in conjunction with another attorney he defended a rule taken by the owners of the Saranflo notes. After this he withdrew from the case as counsel. A few days thereafter, the defendant filed an account as executrix. The assets amounted to $215.72. The funeral charges amounted to $156.49, and the law charges to $89.65, among which figured the following item: "Attorney's fees, Walter S. Lewis $35"; the proportion coming to him was $16.10. The account was homolagated without opposition, but the plaintiff was never paid the $16.10.

There were only two witnesses examined: the plaintiff and the defendant.

The plaintiff makes no claim for services rendered to the Succession proper; his demands are for services he alleges he rendered to the defendant individually. We consider that all his efforts in connection with the probate of the will and appointment of the executrix, and with the Inventory, such as the examination of the contents of the bank-box and of the papers in the office of the deceased, and the procuring of the order of sale, and his defense of the rule for the Sarenflo notes, and his several consultations with the defendant and conferences with the creditors are all part and parcel of the succession proceedings and properly chargeable to the succession. For these he has been put upon the account of the Executrix for $35, and that account has been homologated without opposition.

Article C. C. 1106 (1098) provides that an inventory shall include an exact and particular description of all the titles books, credits and other important papers found in the succession and a description and enumeration of the different bundles in which the other papers have been put up by the officer, such as letters and others.

The Civil Code Article 1682 (1675) says:

"The expenses incurred by the executor for affixing the seals, for the inventory, for the accounts, and the other charges relative to his functions, shall be defrayed out of the Succession".

Under Article 3197 (3164) and 3252 (3219), these same expenses are secured by a privilege upon the property, movable and immovable, of the succession.

The Supreme Court has held in numerous cases that attorney's fees were included in those expenses. 24 A. 162; 22 A.366; 11 A. 298; 1 R. 98; 13 A. 110; 1 A. 224; 29 A. 745; 14 A. 399; 33 A. 1377; 45 A. 1065; 49 A. 83, 1115; 36 A. 304; Succession of Heffner 49 A. 407; Fenner vs. Succession of Mc.Cann 49 A. 600, 1176; Mc Ceely vs Same 50 A. 824 (838); 123 La. 498 (510); 138 La. 553;

In the Succession of Aiken, 144 La. 65, the Supreme Court said that the executor was not liable individually for attorney's fees, and in the Succession of Baxter, 45 A. 1065, where the liquidator filed an account merely to have the amount of his fee adjudged, the Court held that his attorney's fees were a just

106

charge against the succession.

Such being the law and the jurisprudence, the presump_
tion is, that when an executor engages the services of an attor-
ney-at-law to settle a succession he does so in his official ca-
pacity and that the succession alone is liable for the payment of
the fees of the attorney. In order to hold the Executor personally
liable, the attorney must show one of two things: either that the
Executor expressly bound himself to pay the attorney, or that the
services rendered had no connection with the Succession. The
plaintiff does not allege any express agreement, and the services
enumerated above are, as we have said, part of proceedings neces-
sary in the settlement of all successions. But the plaintiff
alleges that the principal object of opening the succession was
to locate certain bonds which the defendant claimed as her pro-
perty, and to subserve other interest of hers, and therefore
she should pay the costs. But even so, it is established by an
ancient and long line of decisions that however valuable the ser-
vices of an attorney may have been to a party from a suit in which
he represented other parties having similar interests, he cannot
recover a fee from those whom he does not represent, and who did
not employ him. 5 A. 165; 8 A. 51; 11 A. 596; 27 A. 411; 49 A.
890; 105 La. 593, 599; 1 La. Dig. p 774 § 54.

By a parity of reasoning an attorney employed by one in
a representative capacity cannot hold his client individually
liable because the services may have inured to his benefit per-
sonally. It is generally the case that the services rendered by
an attorney in settling a succession do inure to the personal ben-
efit of the Executor or Administrator. The law provides that in
the selection of an Administrator to a succession, the Court
should appoint parties in interest in the proportion of their
interest; thus: the surviving partner in preference to the heir,
the heir in preference to the surviving husband or wife, the sur-
viving husband or wife in preference to the creditor, and the
creditor in preference to one who is not. C. C. 1042 to 1046,
1121. It follows, therefore, that the law contemplates and favors
the circumstance that parties provoking the opening and settlement
of a succession, are interested and do so with the ulterior motive
of subserving their own interests, and that they employ attorneys

with that object in view. Yet the law does not hold them personally liable for the costs of settling the Succession, and no case has been quoted, and we know of none, where they have been so held. The law is that the succession alone is liable, and in order to hold the Executor personally liable an express agreement must be proven.

The other services of the plaintiff, independent of the succession proceedings, were few. His investigations into the causes of the death of the deceased, and in the question of the liability of the Railway Company and of the Touro Infirmary might have been considered in that class. But for these he testifies he makes no charge. He valued all his services in connection with the policies of insurance at $13, and for this sum there was judgment in his favor. For all his services in the succession of Ezra Willard he was paid as he admits. We perceive no other services for which the plaintiff can claim from the defendant.

The judgment is therefore affirmed.

Judgment affirmed.
January 12th. 1920.