Frank S. Benson et al., Respondents, *v.* Austin Corbin et al., Appellants.

Where in a will there is a clear and certain devise of a fee, about which the testamentary intention is obvious and without ambiguity, the estate thus given will not be cut down or lessened by subsequent words which are ambiguous or of a doubtful meaning.

The will of B. gave to his wife the use and occupation of two dwelling houses during life, and provided that " in case of the sale of either or both with her consent the income of the principal shall be paid to her; " he then devised said dwelling houses to two children, subject to the life occupancy of their mother, and also devised to them all his other real estate subject to her dower right. By a subsequent clause it was provided that in case of the death of both of the children without issue the property devised to them " and their issue " shall not pass to the branches of his own or his wife's family, but is " given, devised," etc., to a beneficiary named. In an action for specific performance of a con-

145   351
147   355
145   351
156   436
145   351
170   ¹276

tract for the purchase of a portion of the real estate of which the testa-
tor died seized, wherein the question as to the validity of plaintiff's title
depended upon the construction of the will, it appeared that aside from
the two dwelling houses the testator's real estate consisted principally
of a large tract of sandy and barren land on the sea shore from which
he had been selling lots for summer homes, and which was only valu-
able for such purposes.  *Held*, that the death without issue referred to
in the devise over meant a death in the lifetime of the testator, and as
the two children named survived the testator they took an absolute
fee in all the lands subject to their mother's life estate and dower
right.

Reported below, 78 Hun, 202.

(Argued March 6, 1895; decided March 19, 1895.)

Appeal from judgment of the General Term of the
Supreme Court in the second judicial department, entered
upon an order made May 14, 1894, which affirmed a judg-
ment in favor of plaintiffs entered upon a decision of the
court on trial at Special Term.

This action was brought to enforce the specific performance
by the defendants Austin Corbin and Charles M. Pratt of a
contract to purchase from plaintiffs certain real estate situ-
ated upon Montauk Point in the county of Suffolk.  Said
defendants refused to complete their purchase on the ground
that plaintiffs were unable to convey a good and merchantable
title for the reason that there was, under the will of Arthur
W. Benson, deceased, through which plaintiffs derived their
title, an outstanding contingent vested interest in the defend-
ant, the Domestic and Foreign Missionary Society of the
Protestant Episcopal Church.

The provisions of said will, so far as referred to in the
opinion, are as follows:

" *Third.* I give and bequeath to my beloved wife the
use of my house, 214 Columbia Heights, and my house
at Montauk, and all their contents during her natural life,
and in case of the sale of either or both with her consent the
income of the proceeds shall be paid to her.

" *Fourth.* I give and bequeath to my relatives and friends
the sums set against their respective names:

" Henry J. Benson, my brother, if he survives me, two thousand dollars ($2,000).

" Sarah E. Johnson, my sister, or her children if she dies, two thousand dollars ($2,000), and all her debt to me.

" John Benson, my brother, if he survives me, two thousand dollars ($2,000).

" George Benson, my half-brother, if he survives me, two thousand dollars ($2,000).

" Elizabeth Kate Barrows, my stepsister, if she survives me, two thousand dollars ($2,000).

" Thomas M. Braine, my old clerk, if he survives me, one thousand dollars ($1,000).

" In all eleven thousand dollars.

" *Fifth.* After the payment of the legacies in Section Four, and all the expenses of administration, I give and bequeath one-third of my personal estate to my beloved wife, Jane Ann Benson.

" *Sixth.* I give and bequeath to my son, Frank Sherman Benson, one-sixth part of my personal estate.

" *Seventh.* I give and bequeath to the United States Trust Company of New York, of which John A. Stewart is President, one-sixth part of my personal estate, in trust, nevertheless, to pay the interest, dividends and coupons to my son, Frank Sherman Benson, during his natural life, and on his death to pay the said principal sum to his child or children, share and share alike, or to the issue of such child or children, and if he shall die leaving no surviving issue, then they shall pay it to the child or children of Mary Benson, share and share alike, or to the issue of such child or children.

" *Eighth.* I give and bequeath to the United States Trust Company aforesaid, the remaining one-third of my personal estate in trust, nevertheless, to pay the interest, dividends and coupons to my daughter, Mary Benson (without any interference of her husband, if she shall marry), during her natural life, and on her death they shall pay the said principal sum to her child or children, share and share alike, or to the issue of

such child or children, but if she shall die leaving no issue, then they shall pay the same to the child, children or issue of Frank Sherman Benson ; and in case of the death of both of my children, leaving no issue them surviving, then I order that they shall pay the whole sum bequeathed to both of my children to the Domestic and Foreign Missionary Society of the Protestant Episcopal Church of the United States of America, for the use of the society, to be expended for current expenses within ten years.   And the said Trust Company are directed not to sell the securities so turned over to them, but to hold them till they fall due, and when they are paid off to invest the money in Government bonds, or railroad bonds, or some other very good security, looking more to the security of the principal than to the rate of interest.

" *Ninth.* I give, devise and bequeath to my son, Frank Sherman Benson, and my daughter, Mary Benson, share and share alike, my house in Brooklyn, 214 Columbia Heights, and my house at Montauk, and all the contents of both, subject to the life occupancy of their mother, and also all my land in Easthampton, Amagansett, Napeag and Montauk, and any and all my other lands wherever situated, subject to the dower right of their mother.

" *Tenth.* It is my will that in case of the death of both of my children leaving no issue, that all my property given and devised to such children and their issue, shall not pass to the branches of my family, or the family of my wife, but that all of it, personal or real, which I have the power to will, and also the trust fund heretofore set apart for income to my wife, is hereby given, devised and bequeathed to the Domestic and Foreign Missionary Society of the Protestant Episcopal Church for the use of the Society, to be expended for the current expenses within ten years."

At the foot of the will was the memorandum : " Having in my lifetime given away large sums of money in charity, I give what is left to my wife and children, with the injunction to them to continue such charitable contributions so far as they are able."

Further facts are stated in the opinion.

*E. B. Hinsdale* for appellant. The general rule is that the death which gives effect to a devise over is a death within the testator's lifetime, unless the language used in the will indicates a different intention. (*Quackenbos* v. *Kingland,* 102 N. Y. 128; *Austin* v. *Oakes,* 117 id. 577, 595; *Fowler* v. *Ingersoll,* 127 id. 472, 477; *Vanderzee* v. *Slingerland,* 103 id. 47.) There are, however, numerous exceptions to the general rule pointed out in the authorities. This is one of the cases to which the exceptions apply. (*Vanderzee* v. *Slingerland,* 103 N. Y. 47; *Mead* v. *Mabin,* 131 id. 259; *Nellis* v. *Nellis,* 99 id. 505; *Buel* v. *Southwick,* 70 id. 581; *In re N. Y., L. & W. R. R. Co.,* 105 id. 89; *Hennessy* v. *Patterson,* 85 id. 91.) The intention of the testator is sought to be arrived at in the construction of a will. In construing this will we need, therefore, to explore the whole instrument to see if there is any evidence of an intention in the mind of the testator, "other than that disclosed by the words of absolute gift," which takes this will out of the arbitrary rule stated by the courts, and establishes the clear intent of the testator that the devise over should take effect upon the death of his children without issue at any time, rather than in the event of his children not surviving him. (*Scholt* v. *Moll,* 132 N. Y. 122; *Crosier* v. *Bray,* 120 id. 366.)

*Julien T. Davies* and *Byron Traver* for Missionary Society, appellant. The testator's intention as to the ultimate and final disposition of his property under the will in question was that in the event of both of his children dying leaving no issue, at any time, "his property should not pass to the branches of his family or the family of his wife," but should go to this missionary society. (*In re Denton,* 137 N. Y. 428; *Mead* v. *Maben,* 131 id. 255; *Vanderzee* v. *Slingerland,* 43 id. 47; *Britton* v. *Thornton,* 112 U. S. 526; *O'Mahoney* v. *Burdett,* L. R. [7 H. L.] 388; *Buel* v. *Southwick,* 70 N. Y. 581; *Nellis* v. *Nellis,* 99 id. 505; *Hennessey* v. *Patterson,* 85 id. 91; *Sherman* v. *Sherman,*

3 Barb. 385.) The appellant missionary society has capacity to take these lands. (Laws 1846, chap. 331 ; Laws 1867, chap. 374 ; Laws 1889, chap. 191 ; Laws 1891, chap. 553.)

*Daly, Hoyt & Mason* and *George M. Van Hoesen* for respondents. The words of the 9th clause are sufficient, if there is nothing in the will to the contrary, to give testator's son and daughter an estate in fee with the absolute power of disposition. (*Helmer* v. *Shoemaker*, 22 Wend. 136 ; *Roseboom* v. *Roseboom*, 81 N. Y. 357 ; *Charter* v. *Otis*, 41 Barb. 533.) If there is nothing in the will to the contrary, the death of the two children without leaving issue would, in a devise of real property, be construed as meaning their deaths during the lifetime of the testator. (*In re N. Y. & L. R. R. Co.*, 105 N. Y. 92 ; *Vanderzee* v. *Slingerland*, 103 id. 55 ; *Fowler* v. *Ingersoll*, 127 id. 477 ; *Washbon* v. *Cope*, 144 id. 297.) If the two children had but a life estate, and the contingency should happen of both dying leaving no heirs, the missionary society could take but one-half of the estate devised, and the remaining half in the land would be undisposed of. (*Vernon* v. *Vernon*, 53 N. Y. 361 ; *Lupton* v. *Lupton*, 12 Johns. Ch. 623.) Where it appears by the devise itself, or from any other words in the will, or from the general scheme of the will, that the intention was that the devisee was to take the estate in fee with the absolute power of disposition, a subsequent clause, giving a contingent remainder, is void as inconsistent with and repugnant to the estate already given. The two dispositions being inconsistent with each other, the latter one fails and is void, for a valid executory devise cannot subsist under an absolute power of alienation in the first taker. (*Van Horn* v. *Campbell*, 100 N. Y. 294 ; *Helmer* v. *Shoemaker*, 22 Wend. 137 ; *Jackson* v. *Bull*, 10 Johns. 295 ; *Jackson* v. *Robins*, 15 id. 169 ; 16 id. 537 ; *Campbell* v. *Beaumont*, 91 N. Y. 468 ; *McDonald* v. *Walgrave*, 1 Sandf. Ch. 274 ; *Ide* v. *Ide*, 5 Mass. 500 ; *Wilson* v. *Doe*, 4 Leigh, 408 ; *Riddock* v. *Cohen*, 4 Rand, 545 ; *Cook* v. *Walker*, 15 Ga. 459.) A fee once given is not cut down, except by clear intention.

(*Clark* v. *Leup*, 88 N. Y. 232; *Byrnes* v. *Stilwell*, 103 id. 460; *Roseboom* v. *Roseboom*, 81 id. 359; *Freeman* v. *Coit*, 96 id. 68; *Campbell* v. *Beaumont*, 91 id. 466; *Vanderzee* v. *Slingerland*, 103 id. 47; *In re McClure*, 136 id. 231; *Ferry* v. *Wiggins*, 47 id. 517; *Helmer* v. *Shoemaker*, 22 Wend. 138.) The provision in the 3d clause respecting the dwelling houses is to be considered in connection with the devise to them of all his real estate in the 9th clause; for, in determining what a testator meant, every part of the will must be considered and the natural ordinary meaning of the words of a particular clause may be modified by other provisions. (*Mullaly* v. *Sullivan*, 136 N. Y. 231.) That testator meant by the devise in the 9th clause that they should have the disposition of the property devised by it and could dispose of it subject to their mother's right of dower, appears further by the nature of the real property which the court may look into to fully understand what he meant by the language used in the will. (*Doe* v. *Provost*, 4 Johns. 63; *Van Horn* v. *Campbell*, 100 N. Y. 294; *Helmer* v. *Shoemaker*, 22 Wend. 137; *Jackson* v. *Bull*, 10 Johns. 295; *Jackson* v. *Robins*, 15 id. 169; *Campbell* v. *Beaumont*, 91 N. Y. 468.) Extrinsic evidence was admissible to show situation of testator. (*Stinson* v. *Vrooman*, 99 N. Y. 70; *Shulter* v. *Johnson*, 38 Barb. 81; *Terpenning* v. *Skinner*, 30 id. 377; *Charter* v. *Otis*, 41 id. 525.)

FINCH, J. The only question presented by this appeal arises upon the construction of the will of Arthur W. Benson, and comes to us as the decisive inquiry in an action to compel the defendants, Corbin and Pratt, to specifically perform a contract for the purchase of land. The point of dispute is over the title proffered by the vendors; concededly good if their construction of the will shall prevail, but not to be forced upon the vendees if their view of the title shall prove to be correct.

By the ninth clause of that will the testator devised to his son Frank and his daughter Mary his house in Brooklyn and that at Montauk with all their contents, but subject to the life occupancy of the mother, which had previously been secured

to her by the gift of a life estate, and further devised to the two children all the testator's lands wherever situated, subject to the dower right of their mother. By force of this provision, regarded by itself and as unrestricted and unqualified by any other limitation, the two children took an absolute fee in all the lands of the testator, subject only to the mother's life estate in the two houses and to her right of dower. The statute provides that words of inheritance shall not be necessary to create a fee, but the whole estate of the testator shall pass unless the intent to pass a less estate shall appear by direct words or by necessary implication. The testator subsequently refers to what he supposed himself to have done, and speaks of having given and devised his whole property to his children " and their issue," showing that he perfectly understood their interest to be a fee by the added words of inheritance. The estate thus given is not cut down, or in any manner modified, unless it be by the succeeding and tenth paragraph of the will, which raises the question submitted for our decision. That clause reads thus : " It is my will that in case of the death of both of my children, leaving no issue, that all my property given and devised to such children and their issue shall not pass to the branches of my family, or the family of my wife, but that all of it, personal or real, which I have the power to will, and also the trust fund heretofore set apart for income to my wife, is hereby given, devised and bequeathed to the Domestic and Foreign Missionary Society of the Protestant Episcopal Church, for the use of the society, to be expended for the current expenses within ten years." The inquiry now is whether the death without issue means in the lifetime of the testator, or at any time when the event occurs, whether before or after his decease. There is no dispute as to the general rule of construction. It is thus stated in *Vanderzee* v. *Slingerland* (103 N. Y. 55), by Judge ANDREWS : "Where real estate is devised in terms denoting an intention that the primary devisee shall take a fee on the death of the testator, followed by a devise over in case of his death without issue, it has, I think, been uniformly held in England, and it is the

rule supported by the preponderance of judicial authority in this country, that the words refer to a death without issue in the lifetime of the testator, and the primary devisee surviving the testator takes an absolute fee." And the doctrine has been repeated as recently as *Washbon* v. *Cope* (144 N. Y. 297). While such is the general rule, it is said to maintain its hold somewhat weakly and with a doubtful grasp, and to yield easily to any fact or circumstance indicating a different intention. Although that is undoubtedly true, it takes on some modification by force of another rule, equally well settled, that where there is primarily a clear and certain devise of a fee, about which the testamentary intention is obvious and without ambiguity, the estate thus given will not be cut down or lessened by subsequent words which are ambiguous or of doubtful meaning. If a slight circumstance or a slender reason will in ordinary cases prevent the application of the general rule, the circumstance or the reason must be strong and decisive where the construction collides with a plain devise in fee, and forces a change of its terms by cutting it down to a lesser estate. We do not easily trade a certainty for a doubt.

I deem it a weighty consideration that a construction which follows the general rule making the death without issue relate to a death in the testator's lifetime harmonizes every word and every expression in the will and renders them all consistent and operative, while the rival construction raises an inconsistency at once, only to be remedied by lessening to a practical life estate what naturally stands as a fee, or by discarding the inconsistent limitation as repugnant to the estate devised. If the testator's purpose was to prevent a lapse, the devise in fee needs no change of terms or natural meaning: the explanation that the testator did not want his property to go to the collateral branches of the family is fit and appropriate: and the devise over to the missionary society natural and reasonable: while on the other construction the fee given in a separate clause and by itself becomes a mere life estate, with the result of narrowing and hampering the father's gift to his children, disregarding and distrusting their possible devise of

it by will in case of a failure of issue, by which process it could still be diverted from collaterals or devoted to charity, and giving it contingently to the missionary society largely at the expense of and by an injury to his children, which the surrounding facts show would be neither natural nor reasonable.

That he contemplated no such result is indicated by another fact. He plainly intended that his children should have a complete power of disposition of the lands devised, and makes it known to us in one of those incidental ways which often throw the clearest light upon the testamentary intention. While making provision for his wife, and for that purpose giving to her the use and occupation of the two houses, the possibility of a sale becoming desirable and beneficial occurs to him and he says: "In case of the sale of either or both with her consent the income of the proceeds shall be paid to her." It is evident that he meant his children to have capacity to sell at least with the mother's consent, and assumed it as a matter of course in his thought, and, therefore, provided that in such event her use should attach to the proceeds. If he had meant for them merely a contingent life estate, excluding capacity to transfer a good title, he would surely have armed them in his will with a conferred power of sale, but giving no such authority, and assuming, nevertheless, that it would exist and might be exerted, we cannot escape the conviction that he meant his children to have an absolute power of disposition provided they should live to take at all; but in the possible emergency that they might not live to take at all and so be able by deed or will to dispose of the land, then and only then did he contemplate a devise to the missionary society.

Indeed the phrasing of the tenth clause indicates what in his mind the emergency calling for a devise over to the missionary society in truth was. It was a situation in which the property would "pass" to the collaterals; that is, go to them inevitably, and because there was no power anywhere to prevent, unless he, the testator, exercised it; an emergency which the children could not master because not living to

control it. No such emergency was inevitable except in the single case of their death without issue before the will should take effect. If they survived and took the fee, descent to collaterals was not inevitable. The daughter could devise to her husband, the son to his wife, or both to some useful charity, and the testator might well trust to them to respect his wishes. There was no inevitable passing of title against which only he could provide. But just that emergency did arise if they died childless in his lifetime. In that event the land would inevitably " pass," and it was to avoid that and not to mangle the clear devise to his children that he framed the remainder over as a remedy.

His disposition of his personal estate is adverted to as indicating his meaning in the disputed clause. If the forms of expression were identical with that there used the argument would have a force greater than now belongs to it. But a significant word used in the one case is absent in the other, and a different form of expression is substituted. The testator begins with a distribution of eleven thousand dollars in six separate legacies to collateral relatives and an " old clerk," and in every instance except one he uses the expression, " if he survives me," or " if she survives me," so that he contemplated at the outset the possible death in his own lifetime of these legatees and the lapse of their legacies. His attention is drawn to the subject, he acts with reference to it by an explicit expression, and thus answers the argument addressed to us that because he was seventy-five years of age and his children only in middle life he did not contemplate their possible death before his own. It is not at all rare or unusual for an old man to think that others, though younger, may die before him. The testator then gives one-third of his personal estate to his wife and one-sixth to his son. These bequests are absolute. Then he makes two trusts, covering the other half of his personal estate, giving the income of one-sixth to his son and of one-third to his daughter; and it is in the framing of these trusts obviously meant to run on and continue after his own death that he limits cross remainders, say-

ing, if one shall die without issue surviving then the trustee shall pay to the other. The word "then" is said to mean at that time, and is used again preceding the final contingent remainder in the trust shares to the missionary society. All this the exigencies of a continuing trust very naturally required. But when he proceeds to dispose of his real estate he creates no trust, but gives the land absolutely to his children. As in the direct legacies to certain collaterals his thought ran to the possibility of a death before his own, so here it comes to him again in the contingency that by a failure of issue a lapse may carry the land to collaterals with nobody living to prevent. Therefore he frames the tenth clause, but leaves out the significant word "then" which he used when framing the trusts, and substitutes a different form of expression. He says, "in case of the death of both of my children leaving no issue." If he had written out his thought in full I think it would have run somewhat thus: I have given all my land to my children in fee; I am content that they shall do with it what they please; they may sell it, they may divide it as they shall choose; I put no restraint upon their disposition; but if neither they nor their issue live to take it and dispose of it, and by their deaths in my lifetime descent to collaterals becomes inevitable, "in that case," in that emergency which they cannot control because they are dead, I provide that the collaterals shall not take, but the missionary society shall so far as I have power to effect that result. That seems to me to have been the probable drift of the testator's thought as it finds expression in the written words. But at all events there is nothing in the will to compel an exception to the general rule that the death without issue means a death in the testator's lifetime. Personally, I have no fondness for that rule. I have never been entirely satisfied of its soundness. But it is the law of this state and I owe it an obedience easily rendered in the present case, because even without it I think I should reach the same conclusion.

For if we read the will in the light of the surrounding facts, with the knowledge and under the pressure of which the tes-

tator acted, our construction will be further confirmed. Beyond the two dwelling houses mentioned in the will and a lot at East Hampton of little value the testator's real estate consisted of a large tract of land known as Montauk on the eastern end of Long Island, and embracing about ten thousand acres. It is sandy and barren, offering no temptation to agriculture, but was being slowly sold for summer homes to those who wanted the air of the sea. That process gave it the only visible chance of value, and the testator must have expected his children to follow his example. The last thing that would have occurred to him would have been to tie up the land by a contingency which would prevent his children from selling it in their lifetime and devising it as they pleased at their death, imposing upon them the burden of carrying it without prospect or possibility of relief. If he really meant that there is a painful sarcasm in the memorandum which he left at the foot of his will, in which he recites that he has given everything to his children and urges them to bestow large sums in charity as he himself had done. I am sure that he never doubted for a moment that he had given them his whole real property, as he said, provided only that they should be alive at his death to take it and dispose of it.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed. _____