In re PETERS' ESTATE.

(Supreme Court, Appellate Division, Second Department. March 7, 1902.)

1. PROCEEDINGS UNDER TRANSFER TAX ACT—WILLS—CONSTRUCTION—JURISDICTION.

In a proceeding for the appraisal of a testator's property under the transfer tax act, the court has jurisdiction to construe testator's will.

2. WILLS—CONSTRUCTION—CUTTING DOWN ESTATE PREVIOUSLY GIVEN—RULE.

Where an estate is given in one part of a will in clear and decisive terms, such estate cannot be taken away or cut down by any subsequent words unless they are as clear and decisive as the words of the clause giving the estate.

3. SAME—LIMITATION IF DEVISEE DIE WITHOUT ISSUE.

Where real estate is devised in terms denoting an intention that the primary devisee shall take a fee on the death of the testator, followed by a devise over in case the primary devisee die without issue, the limitation over is conditioned upon his dying without issue in the lifetime of the testator.

4. SAME—CONSTRUCTION.

A will, after giving all of testator's property to his wife for her life, provided at her death that one-sixth of a certain piece of realty should go to a certain son-in-law, and that one-third of all the balance of his property should go to such son-in-law and his wife in two equal shares, one-sixth to each. It further provided that the property which had been willed to such son-in-law should be his in full during his natural life, and should be inherited by his children if he lived and had lawful issue; that his widow, should his wife, testator's daughter, die, and he remarry, should, if she were childless, have her dower rights respected; and subject to these provisions, if such son-in-law should die without lawful issue, the property was to go to testator's legal heirs. *Held*, that the estate in fee given the son-in-law by the first part of the will was not cut down by the subsequent provisions, and hence he took an absolute fee under the will, the provision as to dower peculiarly evidencing that the testator did not intend to give a mere life estate; since, under Laws 1896, c. 547, § 170, a widow has dower only in lands whereof her husband was seised of an estate of inheritance.

Appeal from surrogate's court, Kings county.

Proceedings for appraisal under the transfer tax acts of the property devised and bequeathed by the will of Bernard Peters, deceased. From an order regarding the estate held by James A. Sperry, one of the devisees, he appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

Joseph A. Burr, for appellant.
George H. Fisher, for respondent Camilla W. Peters.

HIRSCHBERG, J. The determination of this appeal involves to a considerable extent the construction of the will of the deceased,

and such construction is within the jurisdiction of the court in these proceedings. In re Ullmann, 137 N. Y. 403, 33 N. E. 480, and cases cited. By his will the testator gave to his wife a life estate in all the property, real and personal, of which he subsequently died possessed. The remainder of his property, exclusive of certain immaterial legacies, he disposed of in these words:

"Of the Brooklyn Daily Times property, located at 24 & 26 Broadway, covering about six city lots, extending from Broadway to South Eighth street, with about 22 feet on the latter and 44 feet on the former street, with all the buildings located thereon, and all the presses, fixtures, and machinery, and all other appurtenances thereunto belonging, after the death of my wife, I will and bequeath to my son-in-law William Cullen Bryant enough to make the one-eighth interest I gave him during my lifetime fully equal to one-sixth of this entire property. The remaining five-sixths I will and bequeath as follows: One-sixth to my daughter Mary Whiting Bryant, one-sixth to my daughter Emily Sperry, one-sixth to her husband, James A. Sperry, and two-sixths, or one-third, to my son, Thomas Pollock Peters. The remaining property I die possessed of, after the death of my wife,—this to include every description of property I own,—I will and bequeath as follows: One-third to Wm. C. Bryant and his wife, Mary, in two equal shares, one-sixth to each; one-third to James A. Sperry and his wife, Emily, in two equal shares, one-sixth to each; and one-third—two sixths—to my son, Thomas. The property I have thus willed to my daughter Emily, including her interest in the Times, should she die without issue, I hereby will and bequeath to her sister Mary and her brother, Thomas, in equal shares. Should Mary die, I hereby will and bequeath all her property derived from me in equal shares to her child or children and the children of her lamented sister Julia, these children to rank equally as though they were the children of one and the same mother. The property I have hereby willed and bequeathed to James A. Sperry, one-sixth of all my possession, shall be his in full during his natural life, and shall be inherited by his children, should he live to have lawful issue, whether by his present or any future lawfully wedded wife. His widow (should my daughter Emily die, and should he marry again), should she be childless, shall have her dower right respected. Beyond that, I will and bequeath this property, if James A. Sperry dies without lawful issue, to my legal heirs."

The appraiser found that the estate given to the appellant, James A. Sperry, was a "survival life estate" with remainder to his children, if any, and, if none, to the legal heirs of the testator; and that, as the disposition of the remainder was uncertain and contingent, it should be taxed at the highest rate, viz., 5 per cent. The learned surrogate confirmed the report excepting as to the assessment upon the contingent remainder, which he held should be reserved for future adjustment, upon the authority of In re Howell's Estate, 34 Misc. Rep. 432, 69 N. Y. Supp. 1016. While the peculiar language of the will renders the testator's intention not perhaps altogether free from doubt, I have reached the conclusion that he meant to give the appellant an absolute one-sixth of the estate in fee. The settled rule of construction applicable to the case is well stated in the headnote to Roseboom v. Roseboom, 81 N. Y. 356, that, "where an estate is given in one part of a will in clear and decisive terms, such estate cannot be taken away or cut down by any subsequent words that are not as clear and decisive as the words of the clause giving the estate." This rule has been frequently enunciated and enforced in the court of appeals. See Campbell v. Beaumont, 91 N. Y. 464; Byrnes v. Stilwell, 103 N. Y. 453, 9 N. E. 241, 57 Am. Rep. 760; Washbon v. Cope, 144 N. Y.

287, 39 N. E. 388; Benson v. Corbin, 145 N. Y. 351, 40 N. E. 11; Goodwin v. Coddington, 154 N. Y. 283, 286, 48 N. E. 729. In Roseboom v. Roseboom, supra, the testator gave to his wife "one-third part of all my property, both real and personal, and to have the control of my farm as long as she remains my widow; * * * and at the death of my wife all my property, both real and personal, to be equally divided between my eight children"; and it was held that she took a fee in the one-third. In Campbell v. Beaumont, supra, the will provided as follows: "I leave to my beloved wife, Mary Ann, all my property, * * * to be enjoyed by her, for her sole use and benefit, and in case of her decease the same, or such portion as may remain thereof, it is my will and desire that the same shall be received and enjoyed by her son Charles;" and it was held that the widow took an absolute title, and therefore the power to dispose of the whole estate, unaffected by the provision as to her son. In Benson v. Corbin, supra, the testator gave certain real estate to two children, but provided in a subsequent clause that in case of their death without issue the property so devised to them "and their issue" should go to a named beneficiary. The court held that the children took an absolute fee, and Judge Finch, in the opinion stated (page 359, 145 N. Y., and page 12, 40 N. E.) that the rule is "well settled that, where there is primarily a clear and certain devise of a fee, about which the testamentary intention is obvious and without ambiguity, the estate thus given will not be cut down or lessened by subsequent words which are ambiguous or of doubtful meaning. If a slight circumstance or a slender reason will in ordinary cases prevent the application of the general rule, the circumstance or the reason must be strong and decisive where the construction collides with a plain devise in fee, and forces a change of its terms by cutting it down to a lesser estate. We do not easily trade a certainty for a doubt." The "general rule" referred to by Judge Finch is the rule that, where real estate is devised in terms denoting an intention that the primary devisee shall take a fee on the death of the testator, followed by a devise over in case of his death without issue, the words refer to a death without issue in the lifetime of the testator, and the primary devisee surviving the testator takes an absolute fee. This rule is declared in some of the cases already cited, and among many others in the cases of Livingston v. Greene, 52 N. Y. 118; Stevenson v. Lesley, 70 N. Y. 512; Quackenboss v. Kingsland, 102 N. Y. 128, 6 N. E. 121, 55 Am. Rep. 771; Vanderzee v. Slingerland, 103 N. Y. 47, 8 N. E. 247, 57 Am. Rep. 701; Goebel v. Wolf, 113 N. Y. 405, 21 N. E. 388, 10 Am. St. Rep. 464; In re Tienken, 131 N. Y. 391, 403, 30 N. E. 109; Stokes v. Weston, 142 N. Y. 433, 37 N. E. 515; Miller v. Gilbert, 144 N. Y. 68, 74, 38 N. E. 979; In re Russell, 168 N. Y. 169, 178, 61 N. E. 166. It is important to bear both rules in mind in the solution of the problem herein presented.

The will of Mr. Peters appears to have been written or dictated by himself. It is the will of an intelligent and educated man, and is free from the language of legal technicality. The words are to be given their natural and ordinary import. He stated that it was his "earnest

desire to have the business of the Brooklyn Daily Times conducted after my death as during my lifetime, under the firm name of B. Peters & Co., so long as any member or members of my family, including my sons-in-law, may retain a controlling interest in the establishment." He left, in addition to his widow, a son and two married daughters. He included the sons-in-law as members of his family, and he gave to his son one-third of his estate, and to each of the remaining four—his daughters and their husbands—an equal interest. It was obviously important, if the business was to continue without a break upon his death, that there should be no uncertainty as to the legatees in case of the death of any during his lifetime. He accordingly provided for the disposition of the shares given to Emily and to Mary in case of their deaths or the death of either, and in these instances the court below has correctly held that the death referred to was one occurring in his lifetime. The same meaning should attach to the final sentence in the first citation from the will herein quoted, viz., that, if James A. Sperry dies without lawful issue, his share should go to the testator's legal heirs. This construction is not only in accord with the uniform rule of the adjudicated cases, but is in harmony with the provisions referring to the possible death of Emily or Mary or both. No good reason exists for a conflicting or heterogeneous construction of precisely similar provisions. A union of interests and harmony and equality in distribution appear to be the dominant ideas in the general benefaction.

Do the remaining suggestions in relation to James A. Sperry's share necessarily indicate an intention to reduce his one-sixth to a life estate, instead of leaving it as absolute as is each of the other shares? I think not. His residuary share is expressly given to him in conjunction with the share given to his wife, Emily, one-third to be given to the two "in two equal shares, one-sixth to each." Emily's share, as has been said, is, and has been held to be, absolute, and it may well be doubted if a life estate could be regarded as "equal" in all the senses in which the word may be here used. The testator adds the words "the property I have hereby willed and bequeathed to James A. Sperry, one-sixth of all my possession, shall be his in full during his natural life." These words do not suggest the idea of diminution, but rather of enlargement,—the property I have given him is to be his "in full." The words "during his natural life," which otherwise might be assumed to convey a limitation of the estate, are, however, directly coupled with the statement that the property so given to him in full "shall be inherited by his children should he live to have lawful issue." This expression is not at all indicative of an interest to be acquired by the children under the will, but rather of an inheritance to come to them upon their father's death. They are to succeed to the estate not because the testator devises it to them as a gift, but because they are to inherit it from their father, to whom he has devised it as an estate of inheritance. The entire clause is the testator's manner of saying that he gives this one-sixth of his estate to his son-in-law and his heirs or lawful issue,—the creation of an undoubted fee. And a very significant and generous desire is further

added in the statement that, should his daughter Mrs. Sperry die, and his son-in-law remarry, the latter's widow, such second wife, should still "have her dower right respected." Now, there could be no dower right to be respected if the husband had but a life estate in the lands. The statute provides—section 170 of the real property law (chapter 547, Laws 1896)—that "a widow shall be endowed of the third part of all the lands whereof her husband was seised of an estate of inheritance at any time during the marriage." It therefore appears that when the provisions of the will which have been held to limit the appellant to a "survival life estate" are carefully analyzed they not only fail to cut down the prior gift by clear and decisive terms of reduction, but are entirely consistent with the preservation of the greater devise. But, as the cases cited show, the rule of law would still require that construction to be adopted which would operate in favor of the fee were the words of diminution ambiguous or uncertain. It follows that the order should be reversed, and the proceedings remitted to the surrogate's court for an adjustment of the transfer tax in accordance with the decision of this court.

Decree modifying transfer tax so far as appealed from reversed, with $10 costs and disbursements, and proceedings remitted to the surrogate's court of Kings county for an adjustment of the tax. All concur.