Rockingham, }
June 27, 1914. }

## HULDAH SALTER *v.* LIZZIE B. PHILBRICK & *a.*

Where a will explicitly, unmistakably, and technically devises an estate in fee simple, upon the sole condition that the devisee shall survive the life tenants, the title so created is not reduced to a determinable fee by a subsequent limiting clause which is inaccurately expressed, self-contradictory in character, and incapable of being made wholly effectual by legal construction.

The rule that the last clause, or branch of a clause, is deemed to indicate the intention of a testator with more certainty than a prior provision of the will is subject to the qualification that those parts which are expressed with technical precision and in unambiguous language may be regarded as more decisive than those which are informal or obscure.

PETITION FOR PARTITION. Trial by the court. Facts found, and case transferred from the April term, 1913, of the superior court, by *Young,* J.

The plaintiff is the only grandchild of Eliza P. Philbrick. The defendants are Lizzie B. Philbrick, widow of Frank A. Philbrick, William E. Carter, surviving husband of Fannie W. Carter, a large number of persons designated as the next of kin of Eliza, and George T. Hughes, appointed by the court guardian *ad litem* for all minors and others interested as heirs-at-law or next of kin of Eliza who are incapacitated to take care of their estate, agent for all persons out of the state or unknown who may have an interest in the property as such heirs or next of kin, and also agent for those not now in being, if any there be. All the next of kin of Eliza are parties and were notified of this proceeding.

Eliza P. Philbrick died testate in 1893. Her heirs-at-law were a son, Frank A. Philbrick, and two daughters, Fannie W. Carter and Carrie P. Philbrick. Paragraph 7 of her will is as follows: "I give, devise, and bequeath unto my said daughters, Fannie W. Carter and Carrie P. Philbrick, as joint tenants and to the survivor of them, for the term of their lives and the life of the survivor of them, my undivided one-third interest, which I own with my son, Frank A. Philbrick, in the real estate and all personal property known as the Farragut and Atlantic House property, consisting of the Farragut and Atlantic Houses and the grounds (excepting a lot of land conveyed to St. Andrews Church), together with all other houses, outbuildings, stables, sheds, and structures of whatever kind thereon situated and connected with the business which I and my

son, Frank A. Philbrick, have carried on there in the name of J. C. Philbrick & Son, and also the furniture, utensils, fixtures, and apparatus, together with the personal property of every kind therewith connected and made use of in conducting said business, excepting the horses, carriages, robes, blankets, and other personal property connected with the stables or belonging thereto which have heretofore been bequeathed unto my said son, Frank A. Philbrick, by this will; and upon the decease of my said daughters, Fannie W. Carter and Carrie P. Philbrick, I give, devise, and bequeath the said undivided third part of the Farragut and Atlantic House property, the furniture and personal property thereto belonging, unto my grandchild, Huldah Salter, if she be then alive, or to her child or children if she should leave any surviving her then living, and to her and their heirs; but if my said grandchild, Huldah Salter, should die before either of my said daughters, Fannie W. Carter and Carrie P. Philbrick, and leave no issue living at the decease of the survivor of my said daughters, then I give, devise, and bequeath said property, real and personal, at the decease of the survivor of my said daughters, or at the decease said grandchild, Huldah Salter, should she survive them and leave no issue living at her death, unto my heirs, to be distributed according to law."

Carrie P. Philbrick subsequently married one Sweet and died in 1897, without issue. Fannie W. Carter, wife of William E. Carter and mother of Huldah Salter, died in 1911. Frank A. Philbrick died without issue in 1901, leaving a widow, Lizzie B. Philbrick. Huldah Salter is now thirty-four years old and unmarried. Eliza P. Philbrick died seized of one undivided third part of the Farragut and Atlantic House property, real and personal, located in North Hampton. Huldah Salter inherited one third of this property through her mother from Frank A. Philbrick and now owns the same subject to the life estate of William E. Carter. The question transferred relates to her title to the one third passing under the will of Eliza P. Philbrick.

*Hamilton, Gregory & Freeman* (of New York) and *Eastman, Scammon & Gardner* (*Mr. Hamilton* orally), for the plaintiff.

*Robert Doe* (by brief and orally), for George T. Hughes, guardian *ad litem*.

Parsons, C. J.  The primary question is the character of the title of the petitioner, Huldah Salter, to one third of the property of which partition is asked.  Does she own that one third in fee simple, or a less estate therein?  The determination of this question involves the construction of the will of her grandmother, Eliza P. Philbrick, under which Huldah claims title.

"The end to be attained in interpreting a will is to effectuate the testator's intention as indicated by the weight of competent evidence, which is not required to come from any given source, or to be of any given weight, if it is relevant to the issue.  'The whole will must be taken together, and such construction be put upon it as will carry into effect the purposes the testator had in view' (*Claggett* v. *Hardy*, 3 N. H. 147, 151); and this construction does not depend upon the order of sentences, or the part of the instrument where qualifying or restrictive words are found." *Stevens* v. *Underhill*, 67 N. H. 68, 70.  "Contracts, wills, and statutes are the makers' intentions proved by competent evidence. . . . The evidence of intention may include various inherent probabilities and the probative force of many circumstances, as well as the literal sense of the words used.  When the meaning is found by giving due weight to everything that legally tends to prove it, it is not a matter of discretion whether it shall be adopted or rejected." *Opinion of the Justices*, 66 N. H. 629, 651.  "The construction of the will is the ascertainment of the testator's expressed intention,—what he meant by what he said,—which is to be determined by the court as a question of fact, and not by the application of arbitrary rules of law. . . . The situation of the testator, the surrounding circumstances, his family and relatives, the devisees and legatees, the nature, amount, and situation of his property, facts tending to place the court in the position of the testator, constitute evidence competent for our consideration upon the issue of what he meant by the words used." *Stratton* v. *Stratton*, 68 N. H. 582, 585, 586.  "It is not necessary that the intention of any written instrument should be expressed in a particular form of words, or by the use of technical terms. . . . Decisions 'which have in so many cases defeated the intention of testators by substituting, through the application of an artificial and technical rule of law, a different estate from that which the testator intended' (*Eaton* v. *Straw*, 18 N. H. 320, 329, 330), are not now followed here." *Hayward* v. *Spaulding*, 75 N. H. 92, 93, 94.

The will of Eliza P. Philbrick disposes of a large amount of property. It bears the marks of the professional scrivener and plainly was not committed to writing by the testatrix. A part of the estate owned by the testatrix and disposed of by the will consisted of the Farragut and Atlantic House property, as it is called, summer resort hotels upon the seacoast, including the real estate and personal property used in operating them. This property formerly belonged to the testatrix's husband, John C. Philbrick. In the settlement of his estate, one third became the property of the testatrix, while two thirds fell to her son, Frank A. Philbrick. After John's death the hotel business was conducted by the testatrix and her son as partners, under the firm name of John C. Philbrick & Son. At the making of the will, the testatrix's immediate relatives were her son, Frank A., two daughters, Fannie W. Carter and Carrie P. Philbrick, and a granddaughter, Huldah Salter, the petitioner, a daughter of Fannie W. Carter. These persons and no others are mentioned in the will, the two daughters being made residuary legatees.

The primary purpose expressed by the testatrix was the division of all her property among these immediate connections, her children and grandchild. With a single exception, the clauses of the will are clearly expressed and easily understood. The difficulty arises from a single clause in the seventh paragraph. By that paragraph, the testatrix, having disposed of all her other property by specific gifts to the son and daughters and by making the daughters residuary legatees, as above stated, proceeds to dispose of her one-third interest in the hotel property. This she gives explicitly to the two daughters, "as joint tenants and to the survivor of them, for the term of their lives and the life of the survivor of them," describing the property as "my undivided one-third interest, which I own with my son, Frank A. Philbrick, in the real estate and all personal property known as the Farragut and Atlantic House property, consisting of the Farragut and Atlantic Houses and the grounds (excepting a lot of land conveyed to St. Andrews Church), together with all other houses, outbuildings, stables, sheds, and structures of whatever kind thereon situated and connected with the business which I and my son . . . have carried on there in the name of J. C. Philbrick & Son, and also the furniture, utensils, fixtures, and apparatus, together with the personal property of every kind therewith connected and made use of in conducting said business, excepting the horses, carriages, har-

nesses, robes, blankets, and other personal property connected with the stables or belonging thereto which have heretofore been bequeathed unto my said son, Frank A. Philbrick, by this will." The bequest to Frank last mentioned was made by the third item of the will, but was made upon the condition that Frank's interest in certain other personal property should be given by him to the testatrix's daughters or to the survivor of them.

This hotel business had been a family affair carried on by the husband and father and by his widow and son after the death of the original owner. The testatrix's purpose was to keep the ownership of all the property, real and personal, so that the business might be carried on after her death in a similar manner. Having given her daughters only a life estate in the property, the testatrix provides for the remainder after the termination of those estates in the following language: "And upon the decease of my said daughters, Fannie W. Carter and Carrie P. Philbrick, I give, devise, and bequeath the said undivided third part of the Farragut and Atlantic House property, the furniture and personal property thereto belonging, unto my grandchild, Huldah Salter, if she be then alive, or to her child or children if she should leave any surviving her then living, and to her and their heirs." This language explicitly, unmistakably, and technically conveys to Huldah the estate in fee simple, upon the sole condition that she survive her mother and aunt. Having so survived—performed the condition—Huldah claims the estate. Whether the testatrix intended she should have the estate so explicitly and technically given is the main question in controversy.

As the will is written to this point, the only question open was the disposition of the estate in case neither Huldah nor any child of hers survived the testatrix's daughters, who had already been made residuary legatees. The clause naturally to be expected in the will is a provision for the possible contingency of Huldah's childless death during the existence of the life estates. For this the will proceeds to provide: "But if my said grandchild, Huldah Salter, should die before either of my said daughters, Fannie W. Carter and Carrie P. Philbrick, and leave no issue living at the decease of the survivor of my said daughters, then I give, devise, and bequeath said property, real and personal—." This condition upon which the gift over is made to depend (the prior death of Huldah without children surviving) having failed, ordinarily the inquiry to whom the testator intended in that event to give the

property would be useless and unnecessary. *Holt v. Burns, ante,* 271. Having stated the condition upon which the gift over depended and the time when the gift was to take effect, by the word "then" introducing the clause, the will proceeds "at the decease of the survivor of my said daughters"—words which serve no useful purpose and to which no particular significance could have been attached. The draftsman then inserts "or at the decease of said grandchild, Huldah Salter, should she survive them and leave no issue living at her death," following with the designation of the beneficiaries "unto my heirs."

Upon this clause is raised the doubt as to the title intended to be given to Huldah. It is claimed that the effect of it is to cut down the fee simple explicitly given her and to make the estate a a fee determinable upon her death without issue living, in which case the gift over was to take effect. But this construction cannot be adopted without rejecting the distinct provision of the same clause by which the gift to the heirs is conditioned upon Huldah's failure to survive the life tenant. There is no language in the will which can be construed to constitute Huldah a tenant for life, or, except in case of Huldah's decease during the life tenancy, to make a devise to her children. The estate claimed to be created is a peculiar one if there can be such, and the existence of a title of such a character would be likely to hamper the harmonious conduct of the business as a family enterprise, as contemplated by the testatrix. If there had been a purpose to create such a title with the wealth of detail in technical expression elsewhere found in the will, it is probable such purpose would have been definitely set forth at length in the clause making the gift to Huldah. The weight of the explicit language giving a fee, as evidence of the testatrix's purpose, is not overcome by the contradictory terms of the clause whose expressed purpose was to dispose of the estate in case Huldah did not get it.

In support of the opposite conclusion, it is said that effect must be given to every word and clause of a will. But no construction can give effect to all the self-contradictory limiting clause, as has already been suggested. It is also suggested that "the last clause, or branch of a clause, is deemed to show the intention of the testator with more certainty than a prior clause in the will." *Sheafe v. Cushing,* 17 N. H. 508, 512. But in this early case the rule is modified by the suggestion that "in construing a will which contains conflicting clauses or language, those parts expressed with tech-

nical precision may be regarded as declaring the testator's intention with greater certainty than those which are less formal." *Ib.* 511. Here the estate in fee is created with technical accuracy. A possible determinable fee is inferable only from language inaccurately used when another subject was under consideration. The value of the rule might be left upon what has already been said in general terms, but the weight to be given this particular rule has heretofore been considered by the court.

"When two words or clauses are contradictory and irreconcilable, and there is no other evidence than their relative position to indicate which the testator intended should control the other, their relative position may have some tendency to prove that, during the time elapsing between the writing of the first and the writing of the second, he changed his mind, and that the second was intended to express the change. This evidence of a fact cannot be turned into a rule of law without an exercise of legislative power. The law prescribes the evidence from which, and the tribunal by which, the meaning of constitutions, statutes, wills, and written contracts shall be determined. An inference of fact drawn from the positions of irreconcilable provisions, or from any other proof contained in a writing, may be safely called a rule of construction, or a rule of evidence, if due care is taken to see that the dubious name does not destroy or weaken the distinction between the evidence from which the proper judicial tribunal ascertains the author's mind, and a rule of law established by legislative authority." *Sanborn* v. *Sanborn,* 62 N. H. 631, 644.

The conclusion that the express language making the gift in this case is not controlled by the subsequent contradictory clause referring thereto is supported by the same conclusion in similar cases.

"I hold it to be a rule that admits of no exception, in the construction of written instruments, that, where one interest is given, where one estate is conveyed,—where one benefit is bestowed in one part of an instrument by terms clear, unambiguous, liable to no doubt, clouded by no obscurity, by terms upon which, if they stood alone, no man breathing, be he lawyer or be he layman, could entertain a doubt,—in order to reverse that opinion, to which the terms would of themselves and standing alone have led, it is not sufficient that you should raise a mist; it is not sufficient that you should create a doubt; it is not sufficient that you should show a possibility; it is not even sufficient that you should deal in

probabilities; but you must show something in another part of that instrument which is as decisive the one way as the other terms were decisive the other way; and that the interest first given cannot be taken away either by *tacitum,* or by *dubium,* or by *possibile,* or even by *probabile,* but that it must be taken away, and can only be taken away, by *expressum et certum.*" Lord *Brougham* in *Thornhill* v. *Hall,* 2 Cl. & F. 22, 36; *Goodwin* v. *Finlayson,* 25 Beav. 65, 68; *Gifford* v. *Choate,* 100 Mass. 343, 344; *Byrnes* v. *Stilwell,* 103 N. Y. 453, 460; *Benson* v. *Corbin,* 145 N. Y. 351, 359; *McIsaac* v. *Beaton,* 37 Can. Sup. Ct. 143,—3 Ann. Cas. 612, 615, note.

As Huldah takes an estate in fee simple, nothing can pass to "my heirs" under the concluding clause of paragraph 7 of the will, and it is unnecessary to consider the question, which has been elaborately argued, whether the testatrix meant as devisees those who were her heirs at her death, or her next of kin when the event occurred.

All persons claiming under those who were Mrs. Philbrick's heirs at her death and all who are now next of kin have been made parties and have had notice of the proceeding. In the superior court, a guardian *ad litem* was appointed for all minors and an agent for all persons unknown or unborn who may have an interest in the question, and their claims have been very fully presented by counsel in this court. Authority is not lacking for the conclusion that by force of such appearance, or upon other grounds, all rights are necessarily adjudicated in a proceeding so conducted. But whether this is so or not, it appears that there are parties before the court adversely interested so as to require the court to pass upon the question of title.

*Case discharged.*


YOUNG, J., did not sit: PLUMMER, J., was absent: the others concurred.