In the Matter of the Probate of the Will of ROBERT J. CONKLIN, Deceased. LOUISE W. CONKLIN, Individually and as Executrix of ROBERT J. CONKLIN, Deceased, Appellant-Respondent; MARTHA CONKLIN et al., Infants, by Their Special Guardian ALEXANDER FOSTER, Respondents-Appellants.

Third Department, August 1, 1961.

*W. Irving Goldrich* and *Philip D. O'Donnell* for appellant-respondent.

*Alexander Foster,* Special Guardian and **attorney for respondents-appellants.**

GIBSON, J. Appeal is taken by petitioner, who is decedent's widow and the proponent and executrix of the will offered for probate in this proceeding, from a decree of the Surrogate's Court which construed the will as giving to her no more than a life estate in decedent's residuary estate. The infant respondents, by their Special Guardian, cross-appeal from so much of the decree as held that the life tenant has power to invade the principal.

About one year before decedent's death, he and appellant executed their joint will now before us. Paragraphs "1" and "2" relate to payment of their debts and funeral expenses and to their burial. Paragraph "3" provides: "All the rest, residue and remainder of our property * * * we hereby give, devise and bequeath each unto the other, intending thereby that the survivor of us shall be entitled to all that either of us possess." Paragraph "4", in pertinent part, provides: "In the event that we shall die as the result of a common accident or disaster, *or should Testatrix, Louise Walsh Conklin, survive Testator, Robert J. Conklin, irrespective of the cause or causes or time of her death, then in those events also,* it is our wish and desire and we do hereby direct the following disposition of our property" (emphasis supplied); gifts to appellant's mother, to decedent's brother and to others then following.

The attorney who drew the will and became a subscribing witness to it, testified that on the day of its date and following a conference with decedent, he prepared and delivered to decedent a draft of the will which was identical with the instrument later executed, except that the words above italicized did not appear in it; that decedent, accompanied by appellant, came to the attorney's office some hours later, and decedent gave to him a memorandum bearing the words "or should Louise survive Bob, irrespective of the cause or causes or time of death, then and in those events also" and requested him to insert that language after the first clause (ending with the word "disaster") of paragraph "4". The witness said that ultimately he did so (with the minor changes apparent) but only after some considerable discussion during which he tried to dissuade decedent, telling him that the language was "meaningless", that "I don't know what you have in mind", but that decedent said, "Put them all in. I am leaving it all to Louise anyway", and, again, "put it in, and we are going to New York, and if you still feel that way we can—I want protection on our trip." When again advised against use of the questioned language, decedent said, "You know I'm Irish and I have to have my two cents in

there." The due execution of the will by decedent and by appellant followed. Thereafter and before their departure from the lawyer's office, in a discussion as to appellant's making a will after his death, decedent said that she would not need a will.

The questioned phrase, originating, so far as appears, with decedent and interpolated at his insistence, would ordinarily be treated as an especially significant indication of his intent; but that result would not follow if, in context, the language should be unintelligible or be found frustrative of an otherwise clearly manifested purpose. If, in this case, the language were to be accepted literally and thereupon given conclusive effect, the widow would, of course, take nothing under the will; and no one contends that such a result was intended.

On the other hand, there seems to us no evidence, intrinsic or extrinsic to the will, that the gift of a life estate was intended. By paragraph " 3 " each spouse, by use of the clearest possible language, makes an absolute gift of all of his estate to the other and then proceeds to emphasize the intent " that the survivor of us shall be entitled to all that either of us possess." It is familiar and long-established law that, " Where there is an absolute gift of real or personal property, in order to qualify it, or to cut it down, the latter part of the will should show an equally clear intention to do so, by the use of words definite in their meaning, and by expressions which must be regarded as imperative " (*Clay* v. *Wood,* 153 N. Y. 134, 140); and that the absolute gift " will not be restricted or cut down to any less estate by subsequent or ambiguous words, inferential in their intent " (*Clarke* v. *Leupp,* 88 N. Y. 228, 231). " We do not easily trade a certainty for a doubt." (*Benson* v. *Corbin,* 145 N. Y. 351, 359.) Certainly, the confused and ambiguous phraseology before us, when set against the prior words of gift, manifest no " equally clear intention " or " imperative " or " definite " direction that it be cut down, and suggest no " strong and decisive " reason for so doing (*Benson* v. *Corbin, supra,* p. 359); but, on the contrary, is so murky as itself to require construction.

Apparently the trial court considered that the problem posed but two alternatives — the " ' desperate remedy ' " of excision, to be invoked only as " ' a last resort ' " (*Matter of Buechner,* 226 N. Y. 440, 443), or a construction limiting the gift to that of a life estate. We consider that neither conclusion was necessary or proper.

It seems to us quite clear that the language was intended for the sole purpose of disposing of appellant's estate in the event

she should survive her husband, making no other valid and effectual testamentary disposition. As has been held, "a joint will may undertake, not only to dispose of the property of the first to die but of the property of the survivor as well. A joint will of this type is effective as the will of the survivor, in the absence of a later will by him (*Matter of Diez*, 50 N. Y. 88; 1 Davids on New York Law of Wills, § 420; *Rastetter* v. *Hoenninger*, 214 N. Y. 66; cf. Surrogate's Court Act, § 150)." (*Matter of Elwyn*, 285 App. Div. 91, 93.) No other construction is consistent with the language itself, with that of paragraph "3" and with the facts and circumstances disclosed by the record. Thus, avoiding the possible intestacy of appellant should she survive her husband (thereupon taking his considerable estate under the will and, without reference to the will, acquiring the proceeds of certain life insurance and becoming sole owner, as well, of the property which they held jointly in a very substantial amount), provision was made for both parties' relatives and other interests. In short, the purpose of the interpolated clause was, with seeming logic and propriety, to make the same disposition of the property in the event of appellant's survival and subsequent death, without a later effectual and enforcible will, as would have been accomplished in the event of the parties' deaths as the result of a common accident or disaster. In the light of this construction, also, there was warrant for decedent's statement that in the event of his prior death appellant would not need a will; an observation inapropos to a life estate situation, in view of the large amount of jointly held property and life insurance proceeds which would pass to appellant directly.

We are not called upon to determine, at this time or upon this record, whether appellant is under contractual obligation to make no different testamentary disposition. (Cf. *Tutunjian* v. *Vetzigian*, 299 N. Y. 315.)

The decree should be modified, on the law and the facts, by deleting the first and second decretal paragraphs thereof and so as to construe paragraphs "3" and "4" of said will in accordance with this opinion, and as so modified, affirmed, with costs to appellant and to infant respondents-appellants appearing by special guardian and filing brief, payable from the estate; and the matter of allowances for services rendered upon the appeal remitted for determination by the Surrogate's Court.

BERGAN, P. J., HERLIHY, REYNOLDS and TAYLOR, JJ., concur.

Decree modified, on the law and the facts, by deleting the first and second decretal paragraphs thereof and so as to construe paragraphs "3" and "4" of said will in accordance with the

opinion herein, and as so modified, affirmed, with costs to appellant and to infant respondents-appellants appearing by special guardian and filing brief, payable from the estate; and the matter of allowances for services rendered upon the appeal remitted for determination by the Surrogate's Court. Settle order.